GEORGE LAW ET AL. *v.* RUSSELL SMITH AND OTHERS.

Under our Statute a child, advanced by gifts of land during the life of his parent, is not entitled to bring such lands into *hotchpot* with the property descending to the heirs of the donor.

The amount to be deducted from the share of a distributee in the estate of an intestate, on account of advancement, is the value of the advancement at the time it was made.

The 13th section of the act directing the descent of intestate estates, &c. to wit: " If real estate shall be conveyed by deed of gift, or personal estate shall be delivered to a child or grandchild and charged, or a memorandum made thereof in writing by the intestate, or by his order, or shall be delivered expressly for that purpose in the presence of two witnesses, who were desired to take notice thereof, the same shall be deemed an advancement to such child, to the value of such real or personal estate," is not intended to exclude other and higher proof of an advancement than is therein designated, but only inferior proof.

Proof of parol declarations of the intestate, without any charge or memorandum or other proof of delivery, is insufficient to prove an advancement

Where articles are delivered by the intestate to his daughter and a memorandum made thereof in which they were described as articles lent, *held*, that if it was the understanding of the parties that the articles should not be reclaimed, they were an advancement, and that the fact that they never had been reclaimed, the declarations of the intestate that he had advanced his daughter, and her own admission that she had been advanced, though not by gifts of so much value as the gifts to her sisters, were sufficient proof that such was the understanding.

An ante-nuptial agreement by which the intended wife agrees to receive a prudent maintenance and support out of her husband's estate in lieu of dower is valid in equity. And *held*, that the support intended by said agreement was a support in kind, not in money.

The widow of the intestate, having agreed with a part of the heirs to disencumber the estate of her support and maintenance charged thereon by an ante-nuptial agreement, for a payment in gross of six hundred dollars, it was held that the heirs, who paid the sum, were entitled to contributions from the other heirs to the extent that their shares in the estate were relieved.

This was a bill in equity for a partition of the lands of the late Jeremiah Smith, deceased, among his heirs at at law. The bill charges that the deceased in his lifetime made gifts of land by deed to each of his sons, the defendants Russell, Amasa and Stephen Smith, the rents and profits of which they received during their father's life, and that said lands were intended as advancements, and exceeded in value the shares to which the defendants are entitled in the estate of the deceased.

The bill also charges the intermarriage of the deceased with Betsey Convers, and the execution in contemplation thereof of the following agreement, to wit :

" Articles of agreement indented and made, this 15th day of April in the year 1831, between Jeremiah Smith of Glocester, in the county of Providence and State of Rhode-Island, of the first part, and Betsey Convers, now residing in said Glocester, of the second part : And whereas a marriage is shortly intended to be had and solemnized between the said Jeremiah Smith and the said Betsey Convers, it is therefore covenanted and agreed between the said parties to these presents in manner and form following, that is to say : First the said Jeremiah, for himself, his heirs, executors and administrators, doth covenant and agree to and with the said Betsey, his intended wife, in case the said intended marriage is had and solemnized, he shall have the full control and disposal of his property for his own use and benefit, the same as before said marriage took place : Secondly, I the said Jeremiah further covenant and agree to and with the said Betsey, if said marriage is had and solemnized, that in case she should outlive me, that she shall have her maintenance and support out of my estate in a prudent manner, as long as she remains my widow and no longer, and she is to have no other property out of my estate after my decease :

Thirdly, I the said Jeremiah am not to be encumbered with-the said Betsey's children that she now has, in any manner whatever. And the said Betsey for herself doth covenant and agree to and with the said Jeremiah, her intended husband, in case the said marriage is had and solemnized, to be satisfied and contented with the preceding agreement in every particular, and ask for nothing more out of his estate.

In witness whereof we have hereunto set our hands and seals this day and year beforewritten. Signed

JEREMIAH SMITH,

Witness,                                    BETSEY CONVERS."

Andrew Stow,

Delight Easten."

After the death of Jeremiah Smith, his widow filed a bill against his heirs at law, to enforce the specific performance of the aforesaid articles, and during the pendency of the bill, in consideration of six hundred dollars paid by the plaintiffs, the three daughters of the intestate, to wit Mary Page, Sophia Eastman and Abby Law, remised, released and forever quit-claimed to them all the right, title and interest claim and demand, specifying her claims under the agreement aforesaid, which she might or ought to have in the estate of the deceased, and thereupon discontinued her bill.

The bill prays that the amount of the several advancements to Russell, Stephen and Amasa, may be ascertained and the land, aforesaid, may be partitioned among the parties according to the rights, so ascertained ; and that said Russell, Stephen and Amasa, if any portion of said premises should be assigned to them, or either of them, should pay the plaintiffs their proportion of the six hundred dollars paid to Betsey Smith, to relieve the estate from the encumbrance of her maintenance and support.

The defendants answered separately and admitted that the advancements were made, as stated, but denied that the amount was equal to their shares in the estate of their father, and Stephen offered to bring the estate which had been advanced to him, into hotchpot. The answer of Stephen, also, alleged an advancement to Polly Page, to the amount of $304 96, proved by a memorandum subscribed by two witnesses. This memorandum was dated March 21st 1818, and reads as follows : " This is a memorandum of what I lend to my daughter Polly Page, the articles named," and, after a specification of articles, the writing is signed by Stephen Page and Mary Page. And said Stephen also alleged his belief, that the other daughters, Sophia Eastman and Abby Law, were each advanced to an equal amount and asked that proper deductions might be made in the partition on that account. The answer of Amasa, is of the same import as Stephen's, but that of Russell, states nothing relative to the advancements to the daughters.

In reference to the claims for contributions from the defendants, on account of the six hundred dollars paid by the plaintiffs to relieve the estate from the support and maintenance of Betsey Smith, the defendants deny that the plaintiffs had any authority to make the agreement in their behalf.

The evidence is sufficiently stated in the opinion.

*Robinson* for the plaintiffs contended, that our statute did not provide for the bringing advancements into hotch pot, but that the advancements were to be appraised at their value when made ; that the articles delivered to Polly Page, were a loan and an advancement must be a gift. *Bulkley* v. *Noble*, (2 Pick. 337.) That the antenuptal agreement was valid (Clancy, p. 221. 4 Br. ch.

515.) *Walker* v. *Walker*, (1 Ves. Sen. 54.)   *Davilla* v. *Davilla*, (2 Vern. 224.)   *Drury* v. *Drury*, (2 Eden. 39.) *Godstone* v. *Ripley*, (2 Eden. 59.)   *Creswell* v. *Byron*, (3 Brown, ch. 362.)   *Estcourt* v. *Estcourt*, (1 Cox. 20,); that Courts of Equity look only to the intention of the parties and if that was to bar the dower, they effectuate it.   *Vizard* v. *Langdale*, (3 Atkins, 8.)   That the intervention of a trustee was unnecessary.   (3 Kent. 146. 2 Roper, 152.)   That the plaintiffs having relieved the estate from the charge for the widow's support by a payment in gross, were entitled to contributions from the defendants in proportion to their shares in the estate.

*Browne* for the defendant, agreed that the advancements to Russell and Amasa, should be appraised at the time of the gift, but contended that Stephen, by bringing his land into hotchpot, was entitled to have it valued as it was at the decease of the intestate.   *M'Caw* v. *Blewit*, (2 M'Cord, 90.)   That the advancement to Polly Page, was good within the statute.   *Brown* v. *Brown*, (16 Verm. 197.) *Bulkley* v. *Noble*, (2 Pick. 337.)   *Hicks* v. *Forrest*, (6 Ired. 528.)   *Wanmaker* v. *Vanbuskirk*, (1 Saxton, 685.) That the advancements to the other sisters, were proved by the oath of the defendants in answer to the bill supported by other evidence, that it was equitable they should be allowed and the plaintiffs, having come into equity, should be compelled to do equity.   That with reference to the claim for contributions, the plaintiffs were not entitled to them, because, their being no trustee, the antenuptial contract was cancelled by the marriage, and, because it was not a jointure which would bar dower under the statute.   *Glaze* v. *Wingate*, (3 Brevard, 423,) and, that though the contract were valid, the plaintiffs had no power to bind the defendants by their composition with the widow, and that the widow's lien being unliquidated,

the plaintiffs were mere volunteers, whereas, to entitle them to contribution the payment must have been obligatory.

GREENE, C. J., delivered the opinion of the Court. This is a bill for the partition of a certain tract of land belonging to the late Jeremiah Smith, deceased. It charges, among other things, that the defendants, the three sons of the deceased, viz. Stephen, Amasa and Russell, had all been advanced their full share of their father's estate by conveyances severally made to them by their father. The defendants have filled separate answers and all admit advancements were made to them respectively, but deny that the amount thereof was equal to the share of the sons in the estate of their father, and Stephen offers to bring the estate, which has been advanced to him, into hotchpot.

The course of proceedings in cases of advancement, is provided in the 11th section of the act directing the descent of Intestate Estates and the settlement thereof.

This section not only gives no authority for any one of the parties, who have been advanced, to bring such advancement into common stock, but by implication excludes it. The amount of the advancement must be ascertained by the Court of Probate, before any decree of partition can be passed, and this provision is obligatory on this Court as the Court of Probate. By the English statute of distributions, 22 & 23 of Charles II, c. 10, the division by hotchpot prevails only by virtue of the express reservation of the customs of York and London.

As a common law proceeding, it was only known in England in partition between sisters, co-parceners, one of whom had received gifts of estates in frank-marriage. In such case, if land descends from the same ancestor to her

and her sisters in fee simple, she shall have no share of them, unless she will agree to divide the lands so given in frank-marriage with the rest of the lands descending. (2 Black. 189. Lit. sec. 266 to 273.) And gifts in frank-marriage having fallen into disuse, this mode of partition would have become obsolete in England, had it not been revived by the statute of distributions. (2 Black. 190.) It has been adopted by statute in some of the States of this Union, as in Kentucky, Virginia and Missouri. (4 Kent. 419.)

We are therefore of opinion that Stephen Smith has no right to bring his advancement into hotchpot. The amount advanced to him must be ascertained and deducted from his share, in conformity to the provisions of the statute, in the same manner as the amount advanced to the other children.

And in ascertaining this amount, we think the true rule is the value of the advancement at the time it was made. We think this rule the most just as between the parties and most convenient in practice. It has been adopted in many of the States under statutory provisions similar to our own. In *Oyster & others* v. *Oyster & other*, (1 Serg. and Rawle, 422,) it was adopted upon full consideration, by the Supreme Court of Pennsylvania. In *Osgood* v. *Breed's heirs*, (17 Mass. 356,) it was held that interest was not chargeable on monies advanced to a child by the parent. See also *King* v. *Worsley*, (2 Hayward, 366.) *Warfield* v. *Warfield*, (5 Har. & Johns. 459.) *Burton* v. *Dickinson*, (3 Yeger, 112.) *Hall, et ux* v. *Davis, et al.*, (3 Pick. 450.) *Henderson* v. *Henderson*, (3 Rand. 117.)

This rule is founded upon the just idea, that an advancement is a giving by anticipation the whole or a part

of what it is supposed a child will be entiled to, on the death of the parent or party making the advancements.

In Coke Litt. sec. 273, it is said, when partition of land is to be made between coparceners, one of whom has been advanced by a gift in frank-marriage, she must bring the land given in frank-marriage into hotchpot, and it is to be valued according to its worth at the time of the partition. But this authority is inapplicable to a partition under our statute, in which hotch-pot is unknown.

The bill makes no reference to advancements to the complainants, but the answers do.

The answer of Stephen, alleges an advancement to *Polly Page* to the amount of $304 96, and his belief, that the other daughters, Abby Law and Sophia Eastman, were each advanced to an equal amount.

The answer of Amasa states his belief, that the advancements as above stated, was made to Polly Page, and advancements of like amount, made to Abby Law and Sphia Eastman. The answer of Russell, contains no statement in relation to the advancements to the daughters.

We are not at liberty to consider these answers as evidence in the particulars adverted to, they not being responsive to the bill.

The only proof, therefore, of the advancements to Abby Law and Sophia Eastman, exclusive of the answers, is the parole declarations of the intestate, as proved by two witnesses, Peter Cutter and George Turner.

*Peter Cutter* swears he has frequently heard the intestate tell about letting his girls have things, when they were going to be married, to the amount of $500.

*George Turner* swears to statements of about the same import.

The 13th section of the statute declares the kind of evidence which shall be sufficient to prove an advancement of personal property.

We do not think the statute was intended to exclude other and higher proof than is therein designated, but inferior proof we think it was intended to exclude.

In our judgment, proof of parol declarations of the intestate, without any charge or memorandum or other proof of delivery, is insufficient of itself to prove an advancement.

They might, if sufficiently proved, be very proper evidence, in the absence of any statute provision, and many of the States, we believe, are without any such provisions.

The proof of the advancement to Polly Page, stands upon a different footing. There was a delivery of the articles and a memorandum made at the time, but the difficulty is, it purports to be of articles lent to the daughter. If the intestate had stated in writing, that the goods were never intended to be taken from his daughter, the case would come directly within the principle of the decision in *Bulkley* v. *Noble*, (2 Pick. 337.)

We have no doubt such an understanding may be proved parol, as well as in writing. And then the question is upon the sufficiency of the parol evidence in this case to prove such understanding.

In the first place, we have the fact that the goods have never been called for by the intestate or his representatives, but have been used by the daughter and her family as her own, although they were delivered in March, 1818. So that, in fact, it has proved a gift, and it is not unreasonable to suppose the goods would not have been left in this way in possession and use of the daughter, unless such had been the understanding of the parties.

In connexion with this fact, we have the declarations of the intestate, that he had fitted his girls out, when they were going to be married, to the amount of $500, and calculated to let that go against what he let the boys have. These delarations, although, as we have said, they are insufficient alone to prove an advancement, yet are very proper evidence taken in connexion with the other facts of the cause. The declarations of an intestate would be admissible to prove a sale was intended and not a gift. His declarations are admissible in favor of the advancements but not against them.

Then we have the statements of Polly Page herself, that her father had advanced her, but she did not think he had done as much for her, as for the other girls, although what he did might have cost as much.

There is also a very natural motive for putting the memorandum in this form, which was to secure the property from liability to attachment by the husband's credi-. tors.

On the whole, we are satisfied that the goods delivered to Polly Page were intended by the intestate as an advancement. We shall therefore order a reference to a master to ascertain the amount advanced to the sons and to Polly Page, estimating the value thereof at the time the advancements were respectively made.

There is a claim, set forth in the bill, under the antenuptial agreement of the 15th April, 1831.

This agreement is objected to by the defendants as invalid, as a jointure under our statute, and because it was cancelled by the subsequent marriage of the parties.

First. We think this agreement is valid in equity and ought to be enforced, whatever may be its effect at law. In equity any provision however precarious, which a woman agrees to receive in lieu of dower, is binding and

will bar her dower. (15 Mass. 108.   2 Paige, 511.) *Andrews* v. *Andrews*, (8 Conn. 79.) *Williams* v. *Chitty*, (3 Vesey, Jr., 545.)   Roper on husband and wife, 32 Law Library, p. 291.

The present provision is a reasonable and proper one under the circumstances.   The statute of Rhode Island in relation to a jointure at law has no bearing on the present question.

Second.   The agreement in our view of it contemplates a support out of the estate in kind not in money.

Third.   The instrument executed by Betsey Smith, under date December 5th 1848, is in equity not a release of her claim for maintenance, but a transfer of the same to Polly Page, Sophia Eastman and Abby Law, of her right to the maintenance.

But the parties who took the transfer are not entitled to what they may have paid for it, but to what her reasonable support in the manner before stated would have cost the defendants for their share during her life.