[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is an appeal pursuant to G.L. 1956 (1984Reenactment) §§ 33-23-1, et seq., from an order entered by the probate court of the City of Cranston on August 23, 1988. The appellant, Raymond J. Carr, is the duly appointed and qualified executor of the will of Raymond E. Carr. He is joined in this appeal by the other heirs at law of Raymond E. Carr, who are also the residuary legatees of the real property in question. The appellee is Roslyn Carr, formerly Roslyn Wilbur, the surviving spouse of the deceased. By its order the probate court: (1) denied the executor's petition to sell certain real property owned by the testator at the time of his death, (2) overruled an objection by the executor to an election by the widow to waive and renounce the devices and bequests made to her in the testator's will, and (3) sustained the widow's claim of a life estate in the real property pursuant to § 33-25-4.
I.
The material facts, with some exceptions, are substantially undisputed. On October 31, 1984 two documents were executed by the testator in the law offices of Anthony Fratantuono. One was his will. The other was an ante-nuptial agreement which was also executed by the appellee. According to the evidence, the ante-nuptial agreement was executed by parties first and the will was promptly executed afterwards, but not in the presence of the appellee.
Paragraph 5 of the ante-nuptial agreement provides as follows:
 "Both the said RAYMOND E. CARR and ROSLYN WILBUR hereby waive and release any and all rights and claims of any kind, nature and discretion except as hereinafter stated, that he or she may acquire as the surviving spouse in his or her estate upon his or her death, including (but not by way of limitation) any and all rights of intestacy and any and all rights to elect to take against the others Last Will and Testament under any law or amendment thereto and the same or similar law of any other jurisdiction and this shall operate and serve as a waiver and release of his or her right of election in accordance with the requirements of any applicable statute, provided however, that if any of the parties hereto, in his or her sole and uncontrolled discretion, provide for the other in his or her Last Will and Testament, the named surviving spouse agrees to accept such provisions in the Last Will and Testament of the deceased in lieu of any and all statutory right of the surviving spouse to the assets of the deceased spouse."
Paragraph FIFTH of the will reads as follows:
 "I give and bequeath absolutely to my dear friend, Roslyn Wilbur, the sum of Twenty Thousand Dollars ($20,000) if my said dear friend, Roslyn Wilbur, shall be living at the time of my death. I contemplate marrying the aforesaid Roslyn Wilbur, and the bequests to her as set forth in this Paragraph FIFTH and the preceding Paragraph FOURTH
are made to her whether or not I in fact become married to her. In the event I am not married to the aforesaid Roslyn Wilbur at the time of my death, it is my intention and I specifically direct that she shall be entitled to receive the aforesaid sum of Twenty Thousand Dollars ($20,000) and the personal property mentioned in Paragraph FOURTH
above. In addition, in the event that I am married to the aforesaid Roslyn Wilbur at the time of my death and she shall be living at said time of my death, I direct that the aforesaid sum of Twenty Thousand Dollars ($20,000) and the personal property mentioned in Paragraph FOURTH above are bequeathed her in lieu of any and all rights she may have in my estate at the time of my death either by statute or any other reason. If the aforesaid Roslyn Wilbur shall not be living at the time of my death, then in such event, the bequest to her as contained in this Paragraph FIFTH shall lapse, and the said shall be added to and become a part of the rest, residue and remainder of my estate and shall be distributed in accordance with the terms of Paragraph SIXTH of this, my Last Will and Testament."
Raymond E. Carr and Roslyn Wilbur were married on November 3, 1984. Raymond E. Carr died on November 25, 1987. The ante-nuptial agreement was never changed or cancelled during Raymond E. Carr's lifetime. The testator's will was admitted to probate and the appellant Raymond J. Carr was duly qualified as executor by the probate court. Thereafter, on May 5, 1988, Roslyn Carr, as the surviving spouse of the decedent, waived and renounced the devices and bequests made to her in the testator's will and claimed a life estate in real estate located at 92 Bailey Street in Cranston, in accordance with § 33-25-4. The executor on May 12, 1988 objected to the spouse's claim of a life estate on the ground that her claim was barred by the ante-nuptial agreement, a copy of which he filed with his objection to the statutory renunciation and claim. Thereafter the executor filed a petition to sell the real estate, the probate court's denial of which is the subject of this appeal.
II.
The appellee challenges the jurisdiction of the probate court, and this Court on appeal, to consider the effect, if any, of the ante-nuptial agreement on her life estate, as established by law. Section 33-25-2 vests every surviving spouse with a life estate in the real property owned by a decedent at the time of death, subject to encumbrances existing at the time of death. Section 33-25-4 permits a testator to bar such a life estate by a devise or bequest "in lieu of the life estate", unless the surviving spouse files a timely written statement in the appropriate probate court waiving and renouncing the devise or bequest and claiming the life estate. This statutory life estate was intended to and did replace rights of dower and curtesy as they existed on the effective date of the statute.
The appellee contends, in effect, that the function of the probate court is purely ministerial and limited to placing the written statements mentioned in the statute on file as a matter of record, similar to the function of a recorder of deeds under §33-25-4 in cities and towns where real property is located other than the one where the will is admitted to probate. As such, the probate court has no power to pass on the validity of the written statement, or the surviving spouse's claim of title. Jurisdiction to try title to land or to test the validity of written documents purporting to bar claims of title belongs exclusively to this Court, sitting as a common law court or a court of chancery in equity, but not as an appellate court exercising probate powers.
The appellee also points to Gardner v. Gardner, 10 R.I. 211
(1872). In that case a probate court refused to assign dower to a widow. The Supreme Court held that the statutes then in effect did give probate courts power to hear and decide questions incident to the assignment of dower. Such courts did not, however, have any power to consider "equitable" defenses to the assignment of dower arising out of an ante-nuptial agreement. The Supreme Court held, "We think it was intended that they (probate courts) should proceed according to law as a court of law, and they could no more entertain such a defence than this court could on the law side." Id., at 215. Although procedural distinctions between "law" and "equity" have been extinguished in this court in the exercise of its general civil jurisdiction, Legare v.Urso, 100 R.I. 391, 393, 216 A.2d 506, 507 (1966), some jurisdictional distinctions do remain for other counts of limited jurisdiction. See, for example, § 8-8-3(a)(1) (District Court has no jurisdiction of "causes in equity or those following the course of equity" with limited exceptions.)
The case of Blake v. Butler, 10 R.I. 133 (1872) cited by the appellants is of limited help to them. In that case the Supreme Court decided that courts exercising probate jurisdiction to hear and settle the accounts of administrators of the estates of decedents could decide questions of fraud asserted against the administrator in the accounting for the administration of the estate. The Supreme Court held that jurisdiction over fraud was not exclusive to courts of equity but was "exercise[d] by courts of law as well as by courts of equity." Id., at 138. It did not hold that probate courts could consider purely "equitable" defenses.
This Court cannot overrule Gardner v. Gardner, supra.
Only the Supreme Court can do that. McCann v. McCann,121 R.I. 173, 176, 396 A.2d 942, 944 (1979). That case continues to stand for the proposition that the effect of ante-nuptial waivers of spousal survivorship interests in the real property of decedents may not be weighed by courts exercising traditional probate jurisdiction. The reason for that proposition may have limited vitality where "equity" and "law" have been merged, but there may be good policy reasons to withhold jurisdiction over title questions from probate courts.
Since courts exercising probate powers lack jurisdiction to weigh "equitable" defenses to claims of title to life estates in real property established by statute, that portion of the order of the probate court in paragraph 2 by which it overruled the executor's objection to the election by the surviving spouse of a life estate in the real property of the decedent, and which allowed her election to waive and renounce the devices and bequests made to her in the last will and testament of the decedent, and which sustained her claim of a life estate in that real property in accordance with § 33-25-4, must be reversed and vacated.
III.
If, however, courts exercising probate jurisdiction lack any power to weigh putative equitable limitations on life estates claimed by surviving spouses, the question arises as to how they are to carry out the statutory authority they have to order the sale of real estate subject to a claim of such a life estate pursuant to §§ 33-19-3 and 33-25-5. The probate court in this case deftly avoided that problem by denying the executor's petition to sell the real property. Section 33-25-5 is triggered only by a judicial order of sale, not by the denial of such an order. Once any question of the respective interests of the legatees and the surviving spouse in the real property is no longer before it, a probate court, and this Court on appeal, has no procedural or substantive jurisdiction to issue any order purporting to adjudicate those interests. It is therefore not called on to decide under § 33-25-5 whether or not it appears that a surviving husband or wife is or may be entitled under the statute to a life estate in the property ordered sold.
According to the petition of the executor, the grounds for his request for authority to sell the real property was "to liquidate assets for distribution to heirs (presumably legatees only)." The executor already has plenary power to sell this real property under paragraph SEVENTH of the will. A careful reading of the appellants' reasons of appeal discloses no reason why this Court should grant the petition. No evidence has been presented to show any emergent need to liquidate the interests of the several parties in this real property. The reasons of appeal all address that portion of the probate court order which dealt with the appellee's claim of a life estate. That is the only issue upon which evidence was presented and as to which points of law were argued.
Since the exercise of authority under § 33-19-3 to order the sale of real property is purely discretionary and since no valid grounds for requiring such an order have been presented to this Court on trial de novo, that portion of the order of the probate court by which it denied the petition for an order to sell must be affirmed.
IV.
The appellants argue finally that, even if this Court lacks special jurisdiction over the issue presented on this appeal from a probate court's order, it does have general jurisdiction to decide the question presented under its general original jurisdiction of equity matters under § 8-2-13 or its original jurisdiction under § 8-2-14 of actions at law where title to real estate or some right or interest therein is in issue. They also point to the Court's power to declare rights and obligations arising under contracts in § 9-30-1. There can be no doubt that this Court does have original general civil statutory jurisdiction, if properly involved, to adjudicate the issues raised by the appellants in this case. As was pointed out inMesolella v. City of Providence, 508 A.2d 661, 665-66 (R.I. 1986) the issue is not whether this Court has power to adjudicate, but whether an exercise of that power is appropriate.
The appellee has had full notice of the nature of the appellants' claim in this Court since the filing of their reasons of appeal on August 30, 1988. Counsel entered a general appearance on her behalf on October 28, 1988. The issues presented in this litigation are based on the construction of the will and the ante-nuptial agreement both of which have been available to the parties and counsel since May 12, 1988, if not long before. Questions of intent are to be resolved from these documents, which both sides agree are plain and unambiguous and thus not subject to explanation by extrinsic evidence.
Each side has had a full opportunity at hearing to present any evidence it wished on any material issue. Both sides have fully argued and thoroughly briefed all material issues. The parties cannot, of course, confer subject-matter jurisdiction by consent or submission. Paolino v. Paolino, 420 A.2d 830, 833 (R.I. 1980).
This Court must also be mindful that the appellee has vigorously opposed every effort by the appellants to invoke this Court's general equitable or declaratory judgment powers. The appellee appeared, presented evidence and argued the merits of the appellants' claim only after her vigorous objections were tentatively overruled by this Court.
There is no doubt that the proper way for the appellants to present their claim is by the bringing of an appropriate civil action, invoking the general original jurisdiction of this Court in any one of several forms and urging any or all of the applicable legal theories. Order in the court refers to more than decorum in the courtroom. Strict compliance with applicable procedural statutes and rules is essential to the orderly disposition of justice.
Under the particular and peculiar circumstances in this case the Court is satisfied, however, that the interests of justice are best served by deciding the issue presented even though the litigants came into the courthouse through the door marked: Probate Appeals instead of the one marked: Civil Action. Cf.Sarni v. Meloccaro, 113 R.I. 630, 635-36, 324 A.2d 648, 651-52 (1974) (Application for writ of mandamus treated as an equitable claim for mandatory injunction). The appellee points to no procedural or substantive prejudice arising from the Court's exercise of jurisdiction here. She has presented all the relevant evidence she desires on the issue. She has testified at the hearing before the Court. She has not suggested that there are, or even could be, any other documents which have not been produced and presented to the Court. The Court will decide the issue presented under the special circumstances presented in this case by litigants who have been waiting nearly five years to have their rights judicially defined.
V.
The Court finds that the ante-nuptial agreement between Raymond E. Carr and Roslyn Wilbur dated October 31, 1984 is a valid, existing, contract, enforceable by the legatees under the will of Raymond E. Carr against Roslyn Carr. By that agreement she expressly agreed to waive and release any rights she might acquire upon Raymond E. Carr's death in his estate including any right to elect to take against his will. This provision of the agreement clearly refers to the procedure provided in § 33-25-4
to waive and renounce a devise or bequest in a will in lieu of the life estate established in § 33-25-2. Any doubt is cleared up by the last clause of paragraph 5 of the agreement in which she agreed to accept a provision in the last will in lieu of "any and all statutory right" she may have to her late husband's assets. It is well-established and long-standing law in Rhode Island that a party may waive and release surviving spousal interests in the estate of a decedent in a valid ante-nuptial agreement. Peck v.Peck, 12 R.I. 485 (1880); Law v. Smith, 2 R.I. 244 (1852).
The Court further finds that the will and the ante-nuptial agreement were executed by Raymond E. Carr substantially simultaneously and were both intended by him to be mutually and reciprocally referencing to each other. The words "Last Will and Testament" in paragraph 5 of the ante-nuptial agreement referred to the will executed simultaneously by the testator. Hence, Roslyn Carr agreed to accept the bequest to her in paragraphFIFTH in the will in lieu of her statutory rights, whether she knew at the time how much that gift was or not. By the same token, Raymond E. Carr included the bequest in paragraph FIFTH
of his will knowing that Roslyn Carr had agreed to accept that gift in lieu of any and all rights she had in his estate at the time of his death.
The appellee's argument that the "in lieu of" language in the will because it "speaks as of the time of death" means that the testator intended as of the time of his death for Roslyn Carr to have some power to elect against his will defies the conclusion that the will and the ante-nuptial agreement were obviously intended to be read together. The "In addition" language in the will is a mere rhetorical connective between the gift, if he was married to Roslyn Wilbur at the time of his death, and the gift of the same amount to her, even if they were not then married. It would strain reason to conclude that "In addition" to the gift of $20,000 the testator was restoring the election to claim a life estate to Roslyn Wilbur in lieu of the bequest which she had just waived.
This Court is satisfied that the testator intended by the language of paragraph FIFTH that Roslyn Carr would have a gift of $20,000 which she was required to accept in lieu of her statutory life estate and which she could not waive or renounce so long, of course, as the ante-nuptial agreement was still in effect at the time of his death. That the gift was "in lieu of" any statutory benefit emphasized in the will that it was a gift contemplated in the agreement. It was his "sole and uncontrolled discretion" whether or not he would make any such gift under paragraph 5 of the agreement not whether he would carve out some exclusion to the comprehensive waiver and release contained in that very paragraph.
This Court concludes as a matter of law that the ante-nuptial agreement is a complete bar to the exercise by the appellee of any power provided under § 33-25-4 and is a complete waiver and release of any life estate established by § 33-25-2. The statement she filed in the Probate Court of the City of Cranston on May 5, 1988 wherein she waived and renounced the devices and bequests made to her in the will of Raymond E. Carr and wherein she claimed a life estate in real property located at 92 Bailey Street, Cranston, Rhode Island is null, void and of no effect. That statement and its filing constitutes no cloud on or impediment to the title of the residuary legatees under the will to such real property. She is, of course, entitled to her specific bequest of $20,000, as if she had not renounced it.
The appellants will prepare a form of judgment for entry on notice to the appellee for entry in this Court and for filing in the probate court of the City of Cranston.