## MARY A. WARREN *vs.* EDMUND M. WARREN.

### FEBRUARY 11, 1914.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

(1) *Divorce. Alimony. Receivers.*

In a petition for divorce petitioner prayed for alimony, to be charged on respondent's estate. Pending the trial she filed a supplemental petition, alleging that respondent had conveyed his real estate by deeds prepared after the filing of the petition, for the purpose of preventing petitioner from obtaining alimony, and that the releases of dower were not in fact executed by her and that the grantee knew of the fraudulent purpose of respondent and paid no consideration to respondent and petitioner prayed for the establishment of a lien upon the real estate.

Later petitioner filed a further petition, alleging that large amounts were due respondent, from contracts for the sale of such real estate, but that respondent had diverted and concealed a large portion thereof and asked that respondent and his grantee might be enjoined from conveying the real estate, assigning the contracts, collecting moneys thereon and also for the appointment of a receiver. Upon this last petition respondent was enjoined from conveying or encumbering the real estate. Thereafter the grantee of the property, the X. Co. was made a party and after final decree had been entered granting petitioner a divorce *a vinculo,* she renewed her petition for the appointment of a receiver, and a receiver of the property of the respondents was appointed to take control of all contracts and collect the moneys due thereon. Upon appeal by respondent X. Co. from the decree:

*Held,* that proceedings to obtain an award of alimony were equitable in their nature and ancillary to the original proceedings for divorce, and therefore an appeal under General Laws, 1909, cap 289, § 34, would properly lie.

*Held,* further, that the Superior Court as a part of its jurisdiction in divorce and alimony was clothed with all the powers of a court of equity properly incidental to the equitable determination of the property rights involved in an award of alimony.

*Held,* further, that while divorce proceedings are purely statutory, the Superior Court had under the statutes complete jurisdiction both to make the respondent X. Co. a party to such ancillary proceedings, to grant the injunctions and to appoint the receiver.

(2) *Divorce. Alimony.*

After a divorce has been granted for fault of the husband if the wife waives dower, alimony is chargeable upon the *estate* of the husband, as if he were dead, and his whole "estate" is to be ascertained that the court may know the amount and nature of it in order to fix the proper amount of alimony, and such proceedings are equitable in their character, and the court may properly summon in an alleged fraudulent grantee of the property of the respondent.

(3)   *Divorce.   Alimony.   Creditor's Bill.   Equity.*

After a decree for divorce has been granted for fault of the husband, upon
the question of alimony to be awarded petitioner, while the latter is not
a technical "creditor," yet inasmuch as she has waived her dower and her
only relief is a claim for alimony chargeable upon the estate of the husband,
she has the capacity of becoming a creditor in case of a decree in her favor
and is entitled to the protection of the court to prevent the diversion of
the husband's estate until it can be ascertained to what she is entitled and
upon what it may be charged, in a case where the husband had notice of
her claim for alimony since the original petition was filed and as alleged
made a fraudulent conveyance of his property.

(4)   *Divorce.   Alimony.   Injunctions.   Receivers.*

As it is the duty of the Superior Court upon a petition for alimony to ascertain
the "estate" of the husband, it may by its interlocutory decrees control
that "estate" by means of injunctions and receivers, to prevent its diversion
and dissipation.

(5)   *Divorce.   Alimony.   Creditor's Bill.   Choses in Action.*

Where upon proceedings to determine alimony it appeared that the husband
was engaged in selling real estate by installment contracts and had sold
large numbers of lots under such contracts, retaining title until payments
were fully made, and had as alleged conveyed his interest fraudulently
to the X. Co. which thereafter made similar contracts of sale, and made
the collections, thus converting the real estate into money and removing
it from the jurisdiction of the court, a decree appointing a receiver to take
control of such contracts and to collect the moneys due thereunder, for the
benefit of any lien which petitioner might establish thereon, is not open to
the objection that such contracts are *choses in action,* and not subject to
the process of equity even upon a creditor's bill, since the petitions show
a fraudulent scheme to prevent petitioner from securing alimony from the
husband's estate, and facts showing that the respondent grantee was a
trustee for the husband of his estate, including said contracts, and because
under the statute, said contracts were a part of the "estate" of the husband
upon which the claim for alimony was chargeable.

(6)   *Divorce.   Alimony.   Receivers.*

Where upon proceedings to determine alimony the petition charged that the
husband had fraudulently conveyed his estate to a foreign corporation for
the purpose of preventing petitioner from obtaining alimony out of such
estate, petition seeking relief by injunction to restrain the respondents
from conveying such property and for the appointment of a receiver to take
control of contracts for the sale of lots and to collect the money due thereon
is not objectionable because not alleging that said respondent corporation
was insolvent.

(7)   *Divorce.   Alimony.   Obligation of Contracts.*

Where upon proceedings to determine alimony it appeared that the husband
was engaged in selling real estate by installment contracts and had sold
large numbers of lots under such contracts retaining title until payment was

fully made, and had as alleged conveyed his interest fraudulently to the X. Co. which thereafter made similar contracts of sale, and made the collections, a decree appointing a receiver to take control of such contracts and collect the moneys due thereunder for the benefit of any lien which petitioner might establish thereon and restraining respondents from conveying does not impair the obligations of the contracts between respondents and their conditional vendees, where the decree provided that the injunction should be vacated in all cases where the receiver was satisfied that full payment had been made under the contracts and filed a certificate to that effect.

DIVORCE. Heard on appeal of respondent New England Land Company from interlocutory decree and decree affirmed.

PARKHURST, J. The original proceeding in the above ·entitled cause was a petition for divorce *a vinculo matrimonii* filed February 10, 1909, and the respondent Warren was duly ·served with process and entered his appearance, and there.after the petition was prosecuted and defended until a final decree was entered, divorcing the petitioner as prayed, ·October 4, 1911.

In this original petition petitioner also prayed for alimony out of her husband's estate, to be charged thereon. Pending the trial of the original petition, and on January 3, 1910, Mrs. Warren filed a supplemental petition wherein she .alleged the ownership by her husband, when the original petition was filed, of numerous large tracts of land in ten ·cities and towns in this State, describing the same by references to deeds and records; and further alleged that he was the owner of other real estate of great value situate in the states of Maine, New Hampshire, Massachusetts, Connecticut and New York, and in the province of Nova Scotia; and that he had personal estate of great value; and claimed that she was entitled to alimony, based upon the value of all said property. She further alleged that in the month of May, 1909, he caused the deeds mentioned to be recorded in the land records of the various named towns and cities of this State and in the other states named and in Nova Scotia and that the deeds purported to convey to himself as trustee in the State of Massachusetts and to the

New England Land Company in all the other places all his interest in and to his real estate in this State, and in said other states and province, respectively.   She further alleged that all said deeds were prepared by the respondent after the filing of her petition for divorce and alimony, and were so prepared and recorded for the purpose of hindering and preventing the petitioner from obtaining alimony out of his estate and from obtaining surety for any alimony which might be awarded to her and for the purpose of defrauding and depriving the petitioner of the right and benefit of alimony and of obstructing and thwarting the decrees and processes of the court; that said instruments, purporting to contain releases of dower by the petitioner, were not in fact executed by the petitioner; and that any handwriting of the petitioner appearing thereon was fraudulently used by the respondent; that none of the instruments recorded as aforesaid was delivered to the New England Land Company, named therein as grantee, that the New England Land Company knew the fraudulent purpose and intent of the respondent at the time the instruments were executed and left for record, that no consideration was paid by the New England Land Company for said real estate, and that the pretended transfers of the title to said real estate to said company and to said Warren, as Trustee, were of no consequence against the rights of the petitioner; and that all said described real estate was properly chargeable with a lien for any alimony which might be awarded; and prayed for the establishment of a lien upon the real estate described.

April 22, 1910, Mrs. Warren filed a further supplemental petition, referring to her petition for divorce and also to her petition of January 3, 1910; and alleged "that, by a supplement to said petition, filed January 3rd, 1910, she set forth the ownership by said respondent of a large amount of property in this and other states, both real and personal; that, at the time of filing her original petition, contracts to a very large number had been made respecting the sale of a large portion of said real estate, upon which contracts

there was then due to said respondent the sum of, approximately, seven hundred eight thousand ($708,000.00) dollars; that, based upon the ordinary course of collections upon said contracts, and upon contracts which have been made since the time of the filing of said petition for divorce relating to other portions of said land, there would now be due to said respondent the sum of, approximately, seven hundred twenty thousand ($720,000.00) dollars; that, however, upon representations made by said respondent to this petitioner there is only due the said respondent at the present time, upon all the said contracts the sum of, approximately, two hundred thirty thousand ($230,000.00) dollars, and that, of the large amount represented by the difference between the amount which should be due as stated by the petitioner and the amount due as stated by the respondent, there is, as stated by said respondent to this petitioner, but little, if any, of the money representing said sum now in his possession; that the discrepancy above indicated can exist only by reason of a willful diversion and concealment by the respondent of a large portion of his estate; that this petitioner believes from the conditions above set forth, and by reason of the facts and circumstances as set forth in her supplemental petition above referred to, and therefore avers, that said respondent has deliberately diverted and concealed a large portion of his property for the purpose of preventing this petitioner from securing an award of alimony commensurate with the value of his entire property, and enforcing said award; and that your petitioner believes and therefore avers that the respondent will continue to fraudulently divert and conceal his said property, both real and personal, for the purposes above stated.

"Wherefore she prays that said respondents, Edmund M. Warren, and the New England Land Company, named in the amended petition in this cause, be enjoined from conveying or encumbering any portion of the real estate set forth and described in said supplemental petition, and from assigning or transferring any contracts relating to the sale

or the disposition of the same, and from collecting moneys upon said contracts, until the further order of this court.

"And your petitioner further prays that this court will appoint some suitable disinterested person as receiver to take charge and control of the property set forth and described in said supplemental petition, and to collect and receive all sums which may be due upon all of said contracts now outstanding, and to hold said sums to await the further order of this court; and that your petitioner may have such other and further relief as the nature of the case may require, and to this court may seem meet."

A decree was entered upon this petition, April 22, 1910, granting an injunction restraining conveyances and encumbrances, but not as to collections of moneys, and not appointing a receiver.

On the same date, April 22, 1910, petitioner also filed her motion that the New England Land Company named in her petitions as above set forth be made a party respondent; said company being incorporated under the laws of Maine, and having appointed in this State an attorney in fact upon whom service of process might be made according to law.

The record of this case in the Superior Court shows that, pursuant to said motion filed April 22, 1910, the petitioner was granted leave to add the New England Land Company as a party respondent; that, on said 22d day of April, 1910, she did add the New England Land Company as a party respondent; that, on said 22d day of April, 1910, a citation was issued notifying the New England Land Company that it had been made a party respondent to the cause, giving it notice regarding certain allegations made against it in the petition filed April 22, 1910 (already referred to), and notifying it to appear April 30, 1910, at 9:30 o'clock A. M., to be heard relative to petitioner's prayers for injunction, receiver, etc.; that, the citation was duly served on April 23, 1910; that the cause was duly taken as confessed by the New England Land Company on the 19th of January, A. D. 1912; that on the 24th day of January, 1912, the New England

Land Company moved that the "decree *pro confesso* be set aside and that it may be permitted to answer in said cause;" that on the 6th day of February, A. D. 1912, the decree *pro confesso* was set aside on condition "that it" (New England Land Co.) "enter its appearance within two days and on condition that said New England Land Company is bound by the decree referring this cause to a Master, . . . and on condition that said New England Land Company, if it sees fit to appear before said Master, shall defend the. allegations of the petitioner upon the merits only;" that appearance was entered in accordance with the conditions imposed and that ever since the New England Land Company has participated in the proceedings in this cause.

It further appears that the following decree was entered in the Superior Court, January 19, 1912.

"The above cause came on to be heard this day upon the petition of the petitioner for alimony out of the property and estate of the respondent and upon other questions incidental thereto, and thereupon after a full hearing thereof, both parties being present or represented by counsel, it is ordered adjudged and decreed that the petitioner is entitled to alimony out of the property and estate of the respondent; and, for the purpose of ascertaining the amount of such alimony, and the property upon which the same might be established as a lien, it is further ordered, adjudged and decreed that said cause be referred to Charles C. Mumford, as special master in chancery, to ascertain and report to this court, forthwith, the nature, character and value of all the property, of every nature and description, which the respondent had at the time of filing the petition for divorce herein, and all which the said respondent has acquired since the filing of said petition, or now possesses, which could be lawfully used as a basis for determining the amount of alimony to be awarded said petitioner.

"And said master is hereby specially ordered to make a further inquiry into all transactions wherein or whereby

the respondent disposed of, transferred or conveyed, or attempted to dispose of, transfer or convey, any of his property, real or personal, since the tenth day of February, 1909, and particularly, the conveyances from said respondent to the New England Land Company and from said respondent to himself, trustee, of all his real estate in Maine, New Hampshire, Massachusetts, Rhode Island, Connecticut, New Jersey, New York and the Province of Nova Scotia, which conveyances were recorded in the several communities in which the said property was situated, on or about May 19th, 20th, 21st and 22nd, 1909, and determine whether or not said conveyances or attempted conveyances were made in fraud of said petitioner's rights or any of them.

"In pursuance of said inquiry the said master is authorized and empowered to require witnesses to appear and documents to be produced before him, and especially the records, books and papers of the New England Land Company which has been heretofore made a respondent in this cause. And it is further ordered, adjudged and decreed that all the evidence heretofore given in the above entitled cause shall be considered as evidence in the hearing before said master in so far as the same relates to the property of said respondent or the property of said New England Land Company as the same may have been acquired from said respondent. And it is further ordered, adjudged and decreed that all powers conferred upon standing masters in chancery are hereby conferred upon the special master appointed hereby."

May 13, 1913, Mrs. Warren, having now resumed her maiden name of Mary A. White, under the final decree of divorce entered October 4, 1911, filed the following petition for a receiver:

"Respectfully represents the above named petitioner:

"That in connection with her petition for divorce she filed her petition for alimony out of the property and estate of said respondent Warren:

"That by a supplemental petition, filed in this cause on January 3, 1910, she set forth the ownership by said re-

spondent, Edmund M. Warren, of a large amount of property, in this and other states, both real and personal; that in said supplemental petition that petitioner made certain allegations relative to the attempt by said respondent Warren to defraud her and prevent her from obtaining alimony out of said property and from obtaining security for such alimony, to which supplemental petition this petitioner begs leave to refer and all of the allegations in which she hereby reaffirms:

"That on the 22d day of April, 1910, she filed in this cause a petition seeking an injunction restraining the respondents from conveying or incumbering any portion of the real estate set forth and described in said supplemental petition, filed January 3, 1910, and from assigning and transferring any contracts relating to the sale or the disposition of the same, and from collecting moneys upon said contracts and for the appointment of a receiver to take charge and control of said property, to which petition the petitioner begs leave to refer and all the allegations in which petition she hereby reaffirms:

"That on said 22d day of April, 1910, a decree was entered granting the prayer of said petition filed that day excepting as to collecting moneys on the contracts mentioned therein and as to the appointment of a receiver a decree of divorce at that time not having been obtained by this petitioner:

"That on the 4th day of October, 1911, a decree was entered in this cause granting a divorce to this petitioner on the grounds of the adultery of the respondent Warren:

"That on the          day of          1912, a further decree was entered in this cause that this petitioner was entitled to alimony and sending the cause to a master to ascertain the amount, nature and value of the property of the respondent Warren in order to assist this court in determining the amount of alimony to be awarded this petitioner and the security therefor:

"That since the entry of the decree of 1912 this cause

has been pending before the master for the purposes set forth in said decree, and undoubtedly will remain before said master for a considerable length of time before the master can fully ascertain all the facts upon which he was required to report to this court:

"That, since the entry of the decree of April 22, 1910, these respondents have permitted several large and valuable tracts of land to be sold under the powers of sale contained in certain mortgages thereof, although the amount secured by such mortgages in each instance represented only a small portion of the value of the property and of the value of the contracts outstanding on each of said tracts and that the amount already collected upon said contracts far exceeded the amounts due on each of said mortgages; said tracts being a portion of the premises described in said supplemental petition, filed January 3, 1910, and a portion of the property which these respondents were enjoined from conveying, by said decree of April 22, 1910, and this petitioner alleges on information and belief, that these respondents in each such instance permitted the sale to be made and arranged for the purchase of said property at such sales for the purpose of defrauding this petitioner of her rights in said properties and preventing her from obtaining the same as alimony or as security therefor while they, in fact, continue to hold and control such property for their own use and benefit:

"That since the entry of the decree of April 22, 1910, large amounts have been paid upon the contracts referred to in said petition filed that day, and that such amounts have been received either by the respondent Warren or by the respondent, the New England Land Company, and have been removed out of this State and diverted for the purpose of preventing the decree of this court from operating thereon; that in a great many instances the full amount of the contract has been paid or large discounts have been granted so that the purchasers have claimed to be entitled to deeds in accordance with the terms of the

contracts, and that in many such instances the authority
of this court has been invoked to grant relief to the parties
to such contracts and to permit these respondents to convey
the property described in such contracts under a modification
of said decree of April 22, 1910, and that in many instances
such relief has been granted; that in all such cases this
petitioner has lost all benefit of and claim upon the real
estate described in such contracts and of the amounts
payable upon such contracts:

"That by reason of the payments continually made and
to be made under said contracts and the aforesaid collection
and diversions of the amounts so paid and the conveyances
made by the respondents in pursuance of the several modifi-
cations of said decree of April 22, 1910, the real estate
of the respondent Warren in the State of Rhode Island, the
legal title to which is now in the respondent, the New England
Land Company, by the fraudulent act of said Warren, is of
comparatively small value and the amounts now owing upon
said contracts have been greatly reduced and constantly
will continue to be further reduced whereby the property of
the respondent Warren, within the jurisdiction and subject
to the processes of this court, which may be awarded to your
petitioner as alimony or as security therefor has been so
far diminished in value as to be inadequate to answer
the just claims of your petitioner and will be further dimin-
ished in value unless the remaining property of the respond-
ents described in said supplemental petitions filed the 3rd
day of January, A. D. 1910, and the 22nd day of April,
A. D. 1910, including all payments hereafter made upon
said contracts, be held in the custody of this court:

"Wherefor she prays that the respondent Edmund M.
Warren and the respondent New England Land Company
be enjoined from collecting moneys upon any outstanding
contracts relating to any of the property set forth and
described in the supplemental petitions of January 3, 1910,
and April 22, 1910, and that this court appoint some suitable
and disinterested person as receiver to take charge and control

of said property, including said contracts, and to collect and receive all sums which may be due and which become due upon all of said contracts now outstanding and to hold the same subject to the further order of this court, and that your petitioner may have such other and further relief as the nature of the case may require and to this court may seem just and proper."

It may here be noted that the several petitions above set forth in full were duly signed and sworn to by the petitioner.

After the filing of the last petition above quoted, due notice having been given, the cause came on for hearing before a judge of the Superior Court on June 3, 1913, the petitioner and the respondent Edmund M. Warren and the New England Land Company being each represented by counsel. The New England Land Company through its counsel filed a written motion to dismiss the petition upon substantially the same grounds as hereinafter set forth in the reasons of appeal; the motion to dismiss was after argument by counsel denied; and the judge then proceeded with the hearing on the petition; whereupon the petitioner's counsel offered to proceed with proof of the whole case upon the petition. And thereupon the following statement was made before the court by James H. Rickard, then and there present and representing the New England Land Company as its attorney, and now representing said company in its appeal before this court, viz.: "In this matter, in view of the fact that it is understood between counsel and the master that the case will proceed rapidly and be concluded before the master in a short time, we desire to shorten this hearing and for that purpose we will admit that the witnesses for the petitioner upon the present petition would, if called, testify to facts which would make out a *prima facie* case."

This statement was made a part of the transcript of testimony by the official stenographer at said hearing and appears as a part of said transcript (p. 17) now before this court on this appeal, duly allowed by the trial judge; and no dissent therefrom appears in said transcript on behalf of

either of the parties. Thereupon Mr. Rickard suggested Charles C. Mumford as receiver, he being the same person theretofore appointed as master under the previous decree; and the court proceeded to grant the prayer of the petitioner and entered the following decree, on June 10, 1913, viz.:

"This cause came on to be heard on the 3rd day of June, 1913, before Mr. Justice Stearns, upon the petition, filed May 13th, 1913, for injunction and appointment of a receiver, all parties being present or represented by counsel, and was fully presented and argued by counsel, and thereupon upon consideration thereof, it is ordered, adjudged and decreed that the prayer of the petitioner be and is hereby granted and that Charles C. Mumford, of Providence, Rhode Island, be and he is hereby appointed receiver of certain of the property of the respondents Edmund M. Warren and the New England Land Company, to take under his control all contracts connected with the sale of the real estate of said respondents located in the State of Rhode Island described in and referred to in said petition filed May 13th, 1913, by said petitioner; and to collect all moneys which may have been due upon or may become due after said June 3d, 1913, to the said Warren or the said company under said contracts, and to conserve said contracts and moneys for the benefit of any lien which the petitioner may, by the order of this court, establish thereon. The said receiver is hereby authorized and empowered to take into his possession all contracts relative to the sale of said real estate, or any parts thereof, and all books, records, papers and other documents relating to said contracts; to hire suitable assistants for the collection of all moneys due under said contracts and for keeping the accounts connected therewith; and to notify all persons, who shall make full payment of the purchase price in accordance with the terms of said contracts, that deeds may be given to such persons, of the properties to which they may be entitled by reason of said payment.

"And it is further ordered, adjudged and decreed that whenever and as the said receiver is satisfied that full

payment has been made upon any contract relative to said land or any part thereof, he shall forthwith certify such fact to this court by certificate to be filed in the records of this court in this cause; and that, forthwith upon the filing of such certificate in every such case, the injunction of this court decreed on the 22nd day of April, A. D. 1910, relative to the land specified in each such certificate, shall be vacated; and thereafter the petitioner in this cause shall have no lien whatever upon the land specified in each such certificate.

"And the said respondents Edmund M. Warren and the New England Land Company, and each of them, are hereby ordered to, forthwith, upon request of the receiver, deliver to said receiver all evidences of title in the said respondents to the real estate described in the several petitions heretofore filed in this cause, together with all plats made by said respondents, or either of them, in connection with said properties; all books, records and other documents used in connection with said properties, and also all pending contracts made in connection with any of said properties, together with all books, papers and documents of every description used in connection with said contracts.

"And the respondents Edmund M. Warren and the New England Land Company are further ordered to deliver to said receiver forthwith, all moneys which have been received by said respondents or either of them upon said contracts, since the 3d day of June, 1913.

"And it is further ordered, adjudged and decreed that the said respondents Edmund M. Warren and the New England Land Company are enjoined from collecting any moneys due upon said contracts and from interfering in any form with the management and control of said contracts by said receiver.

"And it is further ordered, adjudged and decreed that the order of this court entered on April 22, 1910, enjoining the respondents and each of them from conveying or encumbering any portion of the real estate set forth and described

in the petitions heretofore filed, and from assigning or transferring any contracts relating to the sale or the disposition of the same, shall not be in any manner affected or impaired except as hereinbefore provided in this decree.

"And it is further ordered, adjudged and decreed that the receiver may, upon reasonable notice to the parties hereto, apply at any time to this court for further instructions relative to his duties as such receiver.

"And. it is further ordered, adjudged and decreed that this decree shall be effective as of June 3d, 1913; and nothing herein contained shall operate to restrain this petitioner from applying for ancillary receivership in any other jurisdictions as she may deem proper."

Within ten days after the entry of the above decree, on June 19, 1913, a claim of appeal was filed on behalf of the New England Land Company, the reasons of appeal being stated as follows:

"1.  Said decree is erroneous and ought to be reversed.

"2.  Said decree is contrary to the law.

"3.  The Superior Court was without jurisdiction to appoint a receiver as set forth in said decree.

"4.  The Superior Court was without jurisdiction to enjoin the New England Land Company as set forth in said decree.

"5.  Said decree impairs the obligation of contracts between the respondents and each of them and persons not parties to this cause.

"6.  The Superior Court had no jurisdiction to make the New England Land Company a party to this cause or to make in this cause any orders or decrees against said company or its property.

"7.  It is not alleged in the petition, upon which said decree was entered, that the New England Land Company was insolvent.

"8.  It appears from the records and papers in this cause that the petitioner is not a judgment creditor, and she was not entitled to the relief granted by said decree.

"9. This is not a suit in equity, and the court had no jurisdiction to grant the petition of the petitioner for an injunction and receiver and to enter said decree.

"10. Said petition for receiver and injunction was in the nature of a creditor's bill or of a proceeding under a creditor's bill, and could not be entertained in this proceeding.

"11. The amount of alimony has never been determined by the court.

"12. Said decree contains no provisions for the payment by the receiver of taxes, mortgage interest and other outgoings."

The broad contention urged by this appellant is that the Superior Court, sitting in a divorce suit, and after final decree granting to the petitioner a divorce *a vinculo*, had no jurisdiction, upon the further proceedings looking to an award of alimony, to make this appellant a party to the proceedings or to enjoin it or to appoint a receiver as it has done in the decrees heretofore set forth. And while this appellant contends that this appeal from an interlocutory decree of the Superior Court is fully warranted by the provisions of General Laws, 1909, cap. 289, § 34, as being an appeal taken from a decree entered "upon a hearing in equity," yet the appellant further urges that the Superior Court, in the alimony proceeding, has only the powers expressly given by statute, and has no such general equity powers as it has sought to exercise in this case.

With regard to appeals from interlocutory decrees, the statute (Gen. Laws, 1909, cap. 289, § 34), provides as follows: "Whenever upon a hearing in equity in the Superior Court an injunction shall be granted or continued or a receiver appointed or a sale of real or personal property ordered, by an interlocutory order or decree, an appeal may be taken from such order or decree to the Supreme Court at any time within ten days from the entry thereof in like manner as from a final decree, and such appeal shall take precedence in the Supreme Court."

For reasons which will more fully appear we think the

whole proceeding to obtain an award of alimony is equitable in its nature and is ancillary to the original proceedings to obtain a divorce; and that this appeal is therefore fully warranted under this section of the statute.

The provisions of law giving power to the Superior Court in divorce cases are found in Gen. Laws, 1909, as follows:

Cap. 247 "Of Divorce," after setting forth the various causes of divorce *a vinculo*, provides as follows:

"Sec. 5.   Whenever a divorce is granted for fault on the part of the husband, the wife shall have dower as if the husband were dead; but such dower shall be claimed on proceedings begun within six months after the absolute decree, and, if not claimed within said period, or if claim be made for alimony within said period, then dower shall be deemed to be waived and released, and the only relief of the wife shall be a claim for alimony chargeable upon the estate of the husband, or some specific portion thereof, as the court may decree.   . . ."

"Sec. 16.   After the filing and during the pendency of any petition for divorce the said court may make such interlocutory decrees and grant such temporary injunctions as may be necessary until a hearing can be had before said court."

Gen. Laws, R. I. cap. 273, "Of the Superior Court:" "Sec. 6.   The Superior Court shall have exclusive original jurisdiction, except as otherwise provided by law, of suits and proceedings in equity, and of statutory proceedings followed the course of equity, of petitions for divorce, separate maintenance, alimony, and custody of children."

Gen. Laws, R. I., cap. 274: "Sec. 6.   The Supreme and Superior Courts shall have power to enter such judgments, decrees, and orders, and to frame and issue such citations, executions, and other writs and processes, as may be necessary or proper to carry into full effect all the powers and jurisdiction which are or shall be conferred upon them respectively by the constitution or by law.   . ."

Gen. Laws, R. I., cap. 289, "Of Practice in Equity

Causes;" "Section 1. All petitions for the enforcement
of mechanics' liens, petitions for divorce, and statutory
proceedings so prescribed by statute, shall follow the course
of equity so far as the same is applicable."

It thus appears that by the express terms of the statute the
Superior Court has exclusive original jurisdiction "Of
(1) petitions for divorce," . . . and "alimony;" that "such
petitions shall follow the course of equity so far as the same
is applicable;" that said court "may make such interlocutory
decrees and grant such temporary injunctions as may be
necessary;" that it may make decrees of divorce from the
bond of matrimony; and that, after such decree of divorce
is granted for fault on the part of the husband, "The wife
shall have dower as if the husband were dead" upon claim
therefor as above set forth, or may have "alimony chargeable
upon the *estate* of the husband, or some specific portion thereof
as the court may decree;" that the Superior Court also
has general power to enter such "decrees and orders" . . .
"as may be necessary or proper to carry into full effect
all the powers and jurisdiction" conferred upon it.

Since alimony, under the above provisions of our law is
made expressly incidental to and consequent upon a divorce,
it is plain that by the express terms of the statutes above
quoted the most ample powers are conferred upon the divorce
(2) court (the Superior Court) to take all the proceedings
necessary to determine the amount which shall be awarded
and to charge the same upon the "estate" of the husband
or some specific portion thereof. The wife is to have dower,
if she claims it, as if her husband were dead; if she waives
dower and claims alimony, such alimony is chargeable upon
the estate; in the latter case it is as if the husband were dead;
his whole "estate" is to be ascertained in order that the
court may know the amount and nature of it in order to
fix the proper amount of alimony, and how it shall be made
to respond to the decree and to secure the performance
thereof. These proceedings, involving, as they do in this
case and may in many cases, estates of large amount and

consisting of many parcels of real estate in this and other jurisdictions, and of many and varied kinds of personal estate, and involving as they also do the settlement and determination of the right of the wife to her support in accordance with her husband's ability and station, are naturally and inevitably equitable in their character, and this is expressly recognized by the statutes above quoted. We are of the opinion that it was the intention of the General Assembly in framing these statutes to confer upon the Superior Court, as a part of its jurisdiction in divorce and alimony, all the powers of a court of equity properly incidental to the equitable determination of the property rights involved in the award of alimony. In this connection, it is to be noted that, under cap. 247, § 5, above quoted, in case dower is not claimed "the *only* relief of the wife shall be a claim for alimony chargeable upon the estate of the husband, or some specific portion thereof, as the court may decree;" it is quite clear that this means that the court having jurisdiction to grant the decree of divorce is the only court which can have jurisdiction of the alimony proceedings and make the decree therein; and that therefore such equitable powers as are necessary and appropriate to the exercise of such functions were intended to be and are vested in the Superior Court.

It is true, as contended by this appellant, that this court has held that under the law of this State divorce proceedings are purely statutory: *Sammis* v. *Medbury*, 14 R. I. 214, 216; *Leckney* v. *Leckney*, 26 R. I. 441, 443; *Fidler* v. *Fidler*, 28 R. I. 102, 103; *Mowry, Petitioner*, 28 R. I. 242; and it is also true that we have held that, under certain provisions of the divorce statutes "the course of equity" is not "applicable," as in *Fidler* v. *Fidler*, 28 R. I. 102, where it was decided that an "appeal" does not lie from a final decree of the Superior Court granting a divorce, for reasons fully stated in that opinion; and in *Thrift* v. *Thrift*, 30 R. I. 357, it was held that after a decision for petitioner, and before a final decree of divorce, the respondent had the right to

proceed upon a bill of exceptions. These decisions rest solely upon the peculiar provisions of our statute, and have no relation to the questions here under discussion. We are still of the opinion that divorce proceedings under our law are purely statutory, and we find no difficulty in holding that the proceedings of the Superior Court leading to the decree from which this appeal is taken were fully warranted by the provisions of the statutes above set forth, and there-fore that the Superior Court had jurisdiction both to make the New England Land Company a party to these ancillary proceedings and to grant the injunction and appoint the receiver as it did. It is one of the ordinary proceedings of courts of equity to summon in a party respondent, when it is made to appear that such party has an interest in the subject matter of the proceeding. It is to be remembered that the petitioner claimed alimony from the outset; and that by her first supplemental petition she alleged the fraudulent conveyance by her husband of practically all of his real estate to the New England Land Company without consideration for the purpose of preventing her from obtaining alimony and surety therefor, and of thwarting the decrees and processes of the Court; and that this was done with the knowledge of said Company, as fully set forth above; and that by her second supplemental petition she made further allegations of the fraudulent diversion and concealment of a large portion of respondent's estate for the same purposes, through collections of money upon outstanding contracts of sale of real estate. It was upon these allegations and averments of the supplemental petitions that the New England Land Company was, upon petitioner's motion, made a party respondent and was duly summoned in, as fully appears above. We are of the opinion that it was not only proper, but necessary that this Company should be summoned in as it was; it was alleged to be a fraudulent grantee of respondent's real estate with full knowledge of the intended fraud; if these allegations were true it was a mere naked trustee of said Warren, holding

the legal title, and a participant in his fraudulent purposes. It was highly appropriate that it should be before the court to protect itself from these charges if they were not true, and to be subjected to the jurisdiction and decree of the court in the event that they were proved to be true. The allegations of the third supplemental petition filed May 13, 1913, above fully set forth, make it still clearer that the New England Land Company is charged with complicity and participation in all of the fraudulent practices set forth, and show more plainly than ever that this company was and is a proper party respondent to these proceedings. It is idle to argue, as contended by this appellant, that the petitioner is not a creditor and cannot become a creditor until she shall have obtained a decree fixing the amount of

(3) alimony to which she shall be entitled. It is true that she is not yet a technical "creditor" in the sense that she has a liquidated claim for a definite sum of money, upon which she can sue or have execution. But inasmuch as she has waived her dower and her "only relief" is "a claim for alimony chargeable upon the estate of her husband," and her husband has had notice of such claim since her original petition was filed, and has seen fit to convey his property thereafter, as she claims, in fraud of her rights, her only resort for protection from these fraudulent practices is to the court having jurisdiction of her alimony proceedings. She has at least the capacity of becoming a creditor in case the court shall decree in her favor, and she is entitled to the protection of the court by its decrees to prevent the diversion of her husband's estate until such time as it can be ascertained to what she is entitled and upon what it may be charged. If it be the duty of the Superior Court to ascertain the "estate" of the husband, as we hold it to be, then it is within the power of that court by its interlocutory decrees to place its hand by means of injunctions and receivers upon that "estate" which lies within its jurisdiction and to prevent its dissipa-

(4) tion and diversion to places beyond the jurisdiction, until such time as it can ascertain what the "estate" is and so

be enabled to fix the amount of alimony and upon what it shall be "charged." The decree for an injunction and for a receiver is only "interlocutory," subject to modification by the Superior Court at any time upon proper application, and is fully within the general powers of the court as above set forth.

It appears that the respondent Warren was engaged in the business of buying large tracts of real estate in this State and elsewhere and in platting the same into small lots and selling them upon contracts for deferred payments in installments, and that he sold very large numbers of lots in this way, both before and after the filing of the petition for divorce and during the pendency of the proceedings; and that at the times when the several ancillary petitions were filed there were large numbers of such outstanding contracts, under which the purchasers were to pay certain deferred installments; so that title remained in the seller until the payments were fully made, and then only was the purchaser entitled to have a deed; and there were provisions for forfeiture of moneys paid in default of full payment. It follows that after respondent Warren conveyed his lands to the New England Land Company any such outstanding unfulfilled contracts as he had made enured to the benefit of the New England Land Company upon its conveyances of the lots; and any further contracts of sale were made by the New England Land Company. It was through the collection of large sums of money upon these contracts that the real estate of the respondent Warren to very large amounts was being converted into money during the pendency of the proceedings and thereby the opportunity arose for the carrying out of one branch of the alleged fraudulent schemes of the respondents Warren and the New England Land Company as alleged in the petitions above set forth, whereby a very large portion of his estate was alleged to have been taken beyond the jurisdiction. Under the decree appealed from the receiver was directed to take control of all such contracts, to collect all moneys thereunder, and to conserve

(5) the contracts and moneys for the benefit of any lien which the petitioner might establish thereon. It is this portion of the decree to which the appellant most strenuously objects, claiming that these contracts are *choses in action* and are not "assets" subject to the process of a court of equity even upon a creditor's bill; that the petitioner is not, as yet, a creditor, and cannot become a creditor until after decree establishing her right to alimony and the amount thereof; and that in the meantime the respondents Warren and the New England Land Company have the right to handle these contracts as they see fit. The appellant relies upon the case of *Greene* v. *Keene*, 14 R. I. 388, 397, to sustain this position. But that case simply decides that "in the absence of fraud, trust, or other ground of equitable relief, a judgment creditor cannot come into equity to subject a *chose in action* of his debtor to the satisfaction of his judgment." This case has no application here for several reasons. The petitions in this case show both fraud and trust, setting forth facts showing a fraudulent scheme as between the respondents to deprive the petitioner of recourse to the estate of her husband for the security of her claim for alimony; and that the collection and diversion of large sums of money arising from the contracts of sale are elements of this fraudulent scheme; and further setting forth facts which show that this appellant is, as a matter of law, a trustee for Warren of all the estate of said Warren in Rhode Island, including said contracts of sale, having merely received conveyances of Warren's estate without consideration and being a party to the attempted fraud. Furthermore, it must be borne in mind that under the statute, as we have before said, it is the "estate" of Warren, as if he were dead, upon which the claim for alimony is chargeable; and it will not be contended that those contracts are not a part of the "estate" of Warren upon which his executors or administrators would have the right to administer in the event of his death. So that in our opinion, no such technical rule, as contended for by the appellant, under *Greene* v. *Keene*, and

the cases cited in support thereof, in any way prevents the court from placing its hand by means of an interlocutory injunction and receivership upon an important part of the "estate" to prevent its dissipation and diversion. Again it must not be forgotten that by the admissions made on behalf of this appellant and not objected to by counsel for the respondent Warren, all before the court upon the hearing of these petitions, the facts set forth in the petitions are to be taken as proved for the purposes of the hearing and of the entry of the decree appealed from. Again this receivership is objected to by the appellant as if it were in itself something especially and essentially abhorrent and oppressive. On the contrary it is a most common and ordinary exercise of jurisdiction in aid of an injunction in cases of attempted fraud in the dissipation and diversion of an estate. The appellant is a foreign corporation organized "under the laws of the State of Maine, and having an office and principal place of business at Lewiston, County of Androscoggin, State of Maine," as appears by one of its "contracts" on file in this cause; and while it has or had at one time, an attorney in fact located within this State, upon whom service of process might be made, there is no guarantee that property or money in its hands alleged to be held by it as a trustee for Warren will not be taken from this State and held by it at its legal *situs* or elsewhere. The contention of the appellant that it has not been shown to be insolvent, and that therefore no receivership should have been created as against it is quite immaterial in view of all the facts shown and reiterated above.

Again, the appellant contends that the "decree impairs the obligation of contracts between the respondents and each of them and persons not parties to this cause." We find no merit in such contention. On the contrary, inasmuch as the decree of April 22, 1910, above referred to, enjoined the conveyance of real estate, and since it appears that thereafter (see petition of May 13, 1913), many outstanding contracts for sale of lots were fulfilled by purchasers, and in

many such cases the injunction of April 22, 1910, was modified so as to allow the respondents to convey lots sold under such contracts, it is evident that the provisions of the decree appealed from appointing a receiver of the "contracts" and authorizing him to collect the moneys accruing thereon and providing for vacating the injunction in all cases where the receiver is satisfied that full payments have been made and makes a certificate to that effect, amply provide for the carrying out of all contracts of sale by the parties respondent, and do not prejudice the rights of purchasers.

As to the final objection by the appellant, that the decree appealed from "contains no provision for the payment by the receiver of taxes, mortgage interest, and other outgoings" it suffices to say that the decree is interlocutory; that it does not appear that any such provisions were suggested or deemed necessary at the time when the decree was entered; that the receiver has the right to apply for further instruction in these matters, if he finds it necessary for the protection of the "estate;" that the parties respondent have likewise the right to apply for any modification of or addition to the decree in respect of these matters if they deem it necessary. This objection furnishes no reason why the decree should be set aside.

Upon the whole case we are of the opinion that the Superior Court had ample jurisdiction under the statutes to enter the decree appealed from; and that it was both appropriate and necessary under the facts set forth. Certain cases not reported have been referred to as precedents for the granting of injunctions and the appointment of receivers in divorce proceedings; but as none of them came to the point of final decision upon matters here involved, and although in some of them it appears that receivers were appointed, we have preferred to rest this opinion upon what appears to us to be the plain and necessary construction of the statutes.

The decree appealed from entered on the 10th day of

June, 1913, is affirmed; and the cause is remanded to the Superior Court for further proceedings.

*Henry W. Hayes, Richard E. Lyman,* for petitioner.

*James H. Rickard, Jr.,* for respondent, New England Land Company.