298 A.2d 795.

LEONA B. JOHNSON *vs.* WILLIAM R. JOHNSON *et al.*

JANUARY 18, 1973.

PRESENT: Roberts, C.J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J.  This is a petition for certiorari to review a Family Court decree joining the Johnson Land Company, a corporation organized under the laws of this state, and David Weir as third party respondents in a divorce proceeding, and temporarily enjoining them from taking certain actions with respect to the marital domicile of the original parties to the divorce proceeding.

The pertinent facts may be briefly stated.  In July of 1971 the wife, Leona B. Johnson, filed a petition for divorce from bed, board and future cohabitation with her husband, William, and accompanied it with a motion for temporary allowance and other relief pendente lite.  She recites in her motion that the Johnson Land Company owns the real estate on which her marital domicile is located, and that David Weir is a stockholder of that company; she includes in her prayer for relief requests that they be made parties to the proceedings, and be restrained from interfering or attempting to interfere with her possession of the domicile and from selling or otherwise attempting to sell the same.

The third parties were ordered joined and were duly served with process.  At the hearing on preliminary injunction which followed, it appeared that the husband's father had for many years owned a large estate in the town of Bristol known as Poppasquash Gardens and that situated thereon were three dwelling houses, one of which later became the marital domicile in question, and that such property had been conveyed to the Johnson Land Company

during the father's lifetime. All of the company's issued and outstanding stock was then owned and continued to be owned by the elder Johnson until his death when it passed under his will to third party respondent Weir and another, now deceased, in trust the net income therefrom to be paid to the husband during his lifetime and upon his death the remainder to be divided in equal shares among the husband's surviving children. The will also permitted the principal to be invaded for the husband's required support, maintenance or welfare.

Soon after his father's death in 1956, the husband became president of the Johnson Land Company and he held that office until shortly after the commencement of these proceedings. It was in 1956, also, that the husband, together with his wife and children, moved into the marital domicile which they have since occupied under an oral lease whose duration and rental are unspecified.

At the conclusion of the hearing, the trial justice, without rendering either a bench or written decision, caused a decree to be entered in which he (1) found that the Family Court had jurisdiction to make the Johnson Land Company and David Weir parties to the divorce proceeding; (2) awarded the wife the right to occupy the marital domicile and enjoined the husband from interfering with that occupancy; and (3) restrained and enjoined third party respondents "from disposing of or attempting to dispose of the matrimonial domicile" and "* * * from interfering or attempting to interfere with the right of the [P]etitioner [the wife] to continue to occupy said matrimonial domicile * * *."

It is to so much of this decree as purports to restrain and enjoin them, that third party respondents direct their petition for certiorari. At the outset there is the procedural question of whether or not they selected the proper vehicle for bringing their case here. Although the wife's

challenge to the appropriateness of that procedure was first advanced in her memorandum in opposition to third party respondents' motion for leave to file their petition, we did not allude to her challenge when we granted that motion. *Johnson* v. *Johnson,* 109 R. I. 953, 288 A.2d 268 (1972). We do so now.

The wife was, of course, on sound ground when she asserted in her memorandum that a petition for certiorari will not lie when another remedy is expressly provided for review of the alleged errors. This has long been the law. *Cohen* v. *Superior Court,* 39 R. I. 272, 275, 97 A. 794, 796 (1916). She then insisted that G. L. 1956 (1969 Reenactment) §14-1-52 made such a remedy available. That provision, in pertinent part, stipulates that a litigant may appeal to this court "[f]rom any final decree, judgment, order, decision, or verdict of the family court * * *" by following the procedures established by "* * * chapter 24 of title 9 and applicable procedural rules relating to the superior court * * *." Reference to section 7 of that chapter[1] and title discloses that the way to obtain review of an order granting a preliminary injunction entered in the Superior Court is by appeal, and Super. R. Civ. P. 73(a) says that such an appeal must be claimed within twenty days following entry thereof. Hence, the wife concluded in her memorandum that the third party respondents could have appealed as of right from the interlocutory decree and that consequently their motion for leave to file a petition for certiorari should have been denied. While she is

---

[1]General Laws 1956 (1969 Reenactment) §9-24-7 reads as follows:

"Whenever upon a hearing in the superior court an injunction shall be granted or continued, or a receiver appointed, or a sale of real or personal property ordered, by an interlocutory order or judgment, or a new trial is ordered or denied after a trial by jury, an appeal may be taken from such order or judgment to the supreme court in like manner as from a final judgment, and such appeal shall take precedence in the supreme court."

technically correct it does not seem to us that the interests of justice will suffer if now, instead of quashing the writ as improvidently issued, we articulate the motion for leave to file as if it were a claim of appeal. So articulated it was claimed within twenty days of entry of the decree appealed from, and the case is therefore properly here for disposition.[2]

Turning from the procedural to the substantive we find third party respondents — petitioners in these certiorari proceedings — questioning whether the Family Court, as an incident to its consideration of the wife's petition for relief pendente lite, had jurisdiction to make them parties to the divorce proceedings, and, if so, whether it was an abuse of discretion to enjoin them in the manner described.

We approach these questions with the initial observation that the Family Court is a legislative creation having only the authority conferred upon it by statute.[3] *State* v. *Zittel*, 94 R. I. 325, 180 A.2d 455 (1962). While it is not

---

[2]Super. R. Civ. P. 54(b) limiting the right of an appeal from an order disposing of one or more but less than all of the claims in an action making multiple parties or multiple claims has no application to an appeal from an interlocutory order or judgment. 1 Kent, *R. I. Civ. Prac.* §54.3 at 400-01.

[3]General Laws 1956 (1969 Reenactment) §8-10-3, in pertinent part, confers jurisdiction upon the Family Court to hear and determine petitions relative to real and personal property in divorce proceedings "* * * to the end that the wife and children might be awarded appropriate amounts for alimony and support and that the estate of the husband could be secured for the performance of any such award." *Rogers* v. *Rogers*, 98 R. I. 263, 269, 201 A.2d 140, 144 (1964).

That statute has since been amended by P. L. 1972, ch. 30, and while this case is controlled by the statute as it was, rather than as it is, the wife may, following rendition of this opinion, institute similar proceedings claiming entitlement to the same relief under the amendment. Although we do not decide her rights thereunder, we would be less than candid were we not to say that in our judgment it is highly doubtful that the amendment, however else it may change existing procedures, in any way assists her with respect to the particular relief she is seeking.

ordinarily thought of as a court exercising equitable powers, it is no longer open to question that the Legislature endowed it with all of the powers, both legal and equitable, formerly exercised by the Superior Court and the Court of Domestic Relations, respectively, as adjuncts to what were once their exclusive jurisdictions in divorce matters. *Industrial National Bank* v. *Isele*, 108 R. I. 144, 273 A.2d 311 (1971); *Rogers* v. *Rogers*, 98 R. I. 263, 269, 201 A.2d 140, 144 (1964). That grant, while not all-encompassing, is nonetheless sufficiently comprehensive to permit injunctive relief against a husband whose contemplated disposition of his property is intended or apt to impair his ability to provide appropriately for the maintenance and support of his wife and children. *Warren* v. *Warren,* 36 R. I. 167, 89 A. 651 (1914).

Within these general bounds the Family Court certainly possessed discretionary power to enjoin not only the husband, but third party respondents as well. The *Warren* case makes this clear. The question for us is whether the record in this case justifies an exercise of judicial discretion, or whether instead the court acted in an illegal manner, or in favor of one who failed either to make out a prima facie case or was, without legal right, seeking to restrain a lawful act. *Fritz* v. *Presbrey,* 44 R. I. 207, 215, 116 A. 419, 423 (1922); *Blackstone Hall Co.* v. *Rhode Island Hosp. Trust Co.,* 39 R. I. 69, 75-76, 97 A. 484, 487 (1916); *Armour* v. *Hall,* 38 R. I. 300, 95 A. 442 (1915).

In arguing for the propriety of what was decreed, the wife relies principally on *Warren*. There the key allegations were that the husband had fraudulently and without consideration conveyed practically all of his real estate to a third party "* * * for the purpose of preventing her [the wife] from obtaining alimony and surety therefor, and of thwarting the decrees and processes of the [c]ourt * * *", and that the third party respondents' "complicity and par-

ticipation in all of the [husband's] fraudulent practices," if allowed to continue unchecked, would result in his estate being dissipated and diverted to the detriment of the wife's claim to alimony.[4]  *Warren v. Warren, supra* at 186-87, 89 A. at 658.

Passing upon the sufficiency of those allegations the court said:

> "We are of the opinion that it was not only proper, but necessary that this Company should be summoned in as it was; it was alleged to be a fraudulent grantee of respondent's real estate with full knowledge of the intended fraud; if these allegations were true it was a mere naked trustee of said Warren, holding the legal title, and a participant in his fraudulent purposes.  It was highly appropriate that it should be before the court to protect itself from these charges if they were not true, *and to be subjected to the jurisdiction and decree of the court in the event that they were proved to be true.*" (emphasis added) *Id.* at 186-87, 89 A. at 658.

We have referred sufficiently to *Warren* to make it clear that the linchpin to granting injunctive relief was a showing that the husband and the third party were engaged in a collusive scheme designed to strip the former of his assets.  In those circumstances the court intervened in order to preserve property of the husband which, depending upon the final outcome of the proceedings, might be required to protect the well-being of his wife and children.  This pre-

---

[4]When the motion in the *Warren* case was called for hearing, counsel for the third party corporate respondent made the following statement, viz.,

> " 'In this matter, in view of the fact that it is understood between counsel and the master that the case will proceed rapidly and be concluded before the master in a short time, we desire to shorten this hearing and for that purpose we will admit that the witnesses for the petitioner upon the present petition would, if called, testify to facts which would make out a *prima facie* case.' " *Warren v. Warren,* 36 R. I. at 178, 89 A. at 655.

condition to equitable relief prevails elsewhere, as well as in this state, and Clark, *Law of Domestic Relations* §13.6 at 393 (1968) says that a transfer of property will be enjoined only upon proof that it "* * * would prejudice the wife's claim to the property either because she had an interest in the property as such, or because it would disable the husband from making payments for alimony or support."

The facts in this case, however, are totally different from those in *Warren.* Here we have no fraud, no collusion, no complicity, no attempt to thwart judicial powers, no insinuation that property in which the husband had an interest was being transferred without consideration, no intimation that the Johnson Land Company's retention of the marital domicile is necessary to provide for the wife's or the minor child's well-being, and no representation that sale of the family home will in any way impair the husband's ability to make adequate provision for the child's support and his wife's maintenance. Instead, the record contains only the wife's assertion, based upon information and belief and totally unsupported either by her own testimony or that of any other witness,[5] that her husband is scheming to prevent her from using and occupying the marital domicile.

Invoking the *Warren* case as her authority, the wife in her brief asks, at least in part rhetorically, why in this situation the Family Court may not employ an injunction "* * * against a third party in aid of an award of a right

---

[5]With respect to that kind of showing, Clark, *Law of Domestic Relations* §13.6 at 392 (1968) says:

"Although there may be local variations in practice, it is usually held that restraining orders and preliminary injunctions may only be obtained upon affidavits or verified pleadings stating facts which show the necessity for the injunction. General statements of opinion, conclusion, inference or suspicion, or allegations made upon information and belief are not sufficient, since such injunctions often seriously curtail the freedom of one of the parties and should not be granted except upon clear factual grounds."

to occupy a matrimonial domicile * * *?", and why it should "* * * be helpless to prevent the ouster of the wife and children from the family home?" That these questions stem from a misunderstanding of the reach of the *Warren* case is borne out by the wife's failure to point to a single authority, either here or elsewhere, which even hints that a divorce court may enjoin a husband from disposing of whatever interest he may have in a marital domicile upon a showing of nothing more than the naked averment that the husband is about to dispose of that interest. Instead, she relies upon the practice, sometimes followed in divorce proceedings, of restraining a husband from interfering with his wife's use and occupancy of the marital domicile. Using that practice as a springboard she then contends that a court which can restrain interference with the wife's use and occupancy of the marital domicile can also forbid its sale or other disposition.

That argument might be sound if the basis for an exercise of equitable power were the character of a dwelling house, but that is not the case. Injunctive relief is granted, not because the law looks upon the marital domicile as being ipso facto entitled to preservation,[6] but because the husband's exclusion from the premises is required in order to safeguard the physical or other well-being of the wife and children. *McCauley* v. *McCauley*, 267 Minn. 544, 124 N.W.2d 411 (1963); *Burnett* v. *Burnett*, 158 Fla. 464, 28 So.2d 878 (1947); *Smith* v. *Smith*, 49 Cal. App.2d 716, 122 P.2d 346 (1942). Relief, moreover, has been denied absent such a showing. *Luitwieler* v. *Luitwieler*, 57 Cal. App. 751, 207 P. 931 (1922).

---

[6]While by no means conclusive, it is at least worthy of comment that this court has recognized that "* * * the mere fact that the property sought to be partitioned was previously the family home of the parties does not of itself * * * prevent partition being ordered in a proper case." *Bianchini* v. *Bianchini*, 76 R. I. 30, 32, 68 A.2d 59, 61 (1949).

Clearly, what is decisive in this kind of case is not the character of the real estate to which the injunction is directed or if it is the place where the family resides, but whether the proposed use of that property so diverts or dilutes the husband's estate as to impair his ability to provide properly for his wife or children. If it does, then the contemplated use may be enjoined; and if a third party is participating in conduct which is designed or intended to accomplish that purpose, that conduct may also be enjoined.

In this case the wife has not established that her claim falls within these limitations, and it is therefore our opinion that the Family Court abused its discretion when it enjoined and restrained third party respondents "from disposing of or attempting to dispose of the matrimonial domicile" and "* * * from interfering or attempting to interfere with the [wife's] right * * * to continue to occupy said matrimonial domicile * * *."

The writ of certiorari, having been articulated as an appeal, is quashed pro forma, the third party respondents' appeal from that part of the decree which affects them is sustained, so much of the decree appealed from as affects the third party respondents is reversed, and the case is remitted to the Family Court for further proceedings.

*Edwards & Angell, Gerald W. Harrington,* respondent on certiorari.

*Hetherington & Hetherington, Thomas G. Hetherington,* for David Weir, Trustee for The Johnson Land Company, petitioner on certiorari.