354 A.2d 734.

MATTHEW RYAN *et ux. vs.* LINDA FONSECA DEMELLO.

APRIL 9, 1976.

PRESENT: Paolino, Acting C. J., Joslin, Kelleher and Doris, JJ.

KELLEHER, J. This is an appeal from a decree of the Family Court denying and dismissing the petition of an aunt and uncle seeking the custody and right to visit their four-year-old niece. The respondent is the child's mother.

Marie and Matthew Ryan are husband and wife. Marie's brother, Rene Fonseca, who was married to respondent Linda, died on July 30, 1971, merely 3½ months prior to the birth of their daughter, Raynette. About two years later, August 1973, this litigation began when the Ryans filed their petition in the Family Court. The following month Linda married George DeMello.

A hearing on the Ryans' petition was held by a justice of the Family Court in mid-October of 1973. At that time

Raynette was nearly two years old. Following the hearing a consent decree was entered whereby the mother retained custody of the child and the Ryans were permitted to take Raynette on alternate weekends so that she could visit with them from 4 p.m. on Friday to 4 p.m. Sunday. Additionally, the hearing was continued to mid-February so that the Child Welfare Services Division of the Rhode Island Department of Social and Rehabilitative Services could check on this arrangement and report back to the court.

In late January 1974 the division, through oue of its social caseworkers, reported that Linda and her husband were giving Raynette "adequate care and supervision" but the biweekly visits were "confusing for a two year old child." The report suggested that "[i]t might be better if [Raynette] visited less frequently so that she would have longer periods to become used to the routine of her own home." It recommended that the visitations be monthly rather than biweekly.

Five months later, June 29, the mother filed a motion, asking that the decree be modified to terminate all visitations. On July 8 the caseworker filed a supplementary report, in which she related her favorable impressions garnered from her most recent visits to the DeMello home. Once again she suggested that the Ryan visitations be reduced to one per month.

The litigants returned to the Family Court on July 12, 1974. The caseworker appeared and testified. The essence of her testimony was a repetition of the information contained in her earlier reports. At the conclusion of the hearing, the trial justice expressed doubt concerning his jurisdictional authority to give visitation rights to anyone other than a parent. He asked counsel to submit memoranda on this issue and continued the case until the court's next session. The biweekly visits were allowed to continue with

the exception that Raynette would spend 1 full week with the Ryans during the month of August.

In December 1974 the Family Court reopened the case and the trial justice ruled that he had no jurisdiction to award visitation rights, and he also found that the De-Mellos were doing an adequate job as parents. Consequently, a decree was entered denying the petition for custody and terminating the visitations. The Ryans are before us claiming that the trial justice erred in a variety of ways when he terminated the visits. All of these contentions are irrelevant, however, if the jurisdiction issue was correctly resolved against them. We believe it was.

It has been said repeatedly that the Family Court's jurisdiction is limited to the powers expressly bestowed upon it by the Legislature. *Castellucci* v. *Castellucci*, 116 R. I. 101, 352A.2d 640 (1976); *Industrial Nat'l Bank* v. *Isele*, 108 R. I. 144, 273 A.2d 311 (1971); *Rogers* v. *Rogers*, 98 R. I. 263, 201 A.2d 140 (1964). It is a rudimentary principle of law that the question of jurisdiction over the subject matter can be raised at any time by either party or by the court sua sponte. *Castellucci* v. *Castellucci, supra; Dutton* v. *Langlois*, 104 R. I. 528, 247 A.2d 86 (1968); *McGann* v. *Board of Elections*, 85 R. I. 223, 129 A.2d 341 (1957).

The issue raised by the trial justice concerns his power to give visitation rights to the Ryans. If he has the power, it must lie somewhere within the provisions of G. L. 1956 (1969 Reenactment) §8-10-3. The statute is completely silent in this regard. The statute does permit the changing of custody. However, as was pointed out in *Petition of Loudin*, 101 R. I. 35, 39, 219 A.2d 915, 918 (1966), such a change can be accomplished in either of two ways. In cases of marital discord, the Family Court, pursuant to the provisions of §15-5-16, which is made applicable to said court by §8-10-3, has the power to award

custody of a minor child to the parent who in its judgment will best serve the child's interests. Again, the Family Court may award the custody of a child to a relative or some recognized social agency if there has been a judicial determination that the child is delinquent, wayward, neglected, or otherwise comes within the purview of the Family Court Act. Jurisdicion in this regard is found in §§14-1-32 and 14-1-34.

We note that a change of custody because of neglect or dependency can come about only after pertinent information has been supplied to the Family Court by "an appropriate person." Once this information is received, it must be investigated by the court's staff, who in turn must file a report of its findings with a justice of the court. Section 14-1-10. If the justice believes that the court's jurisdiction should be invoked, a petition is filed with the court, asking that the child be adjudged a delinquent or neglected. Section 14-1-11. A summons is then issued to at least one of the parents, and a hearing is held. Section 14-1-16. *See In re Three Minor Children,* 110 R. I. 11, 289 A.2d 434 (1972). Section 14-1-3 defines an appropriate person as being any state or municipal police officers or prosecuting officers, the municipal directors of public welfare or their duly authorized subordinates, or school officials such as truant officers. Nowhere does §14-1-3 include an uncle or aunt within this category. *Cf. Engelhardt* v. *Bergeron,* 113 R. I. 50, 317 A.2d 877 (1974).

Since the right of visitation as a general rule is incident to the status of parenthood, the Family Court can and does regulate this right in a divorce proceeding. It is obvious that the visitation portion of the Ryans' petition is not an ancillary facet of either a divorce proceeding or of the neglect and dependency proceedings contemplated by §14-1-32. Consequently, the trial justice, having found that he had no jurisdiction in the area of visitations, quite

properly ended the visitation rights.[1] Furthermore, we cannot fault his denial of that portion of the petition which sought a change in custody.

The petitioners' appeal is denied and dismissed.

*Ralph D. Morrison,* for petitioners.

*Peter W. Thoms, Rhode Island Legal Services, Inc.,* for respondent.

---

[1]Visitation rights with respect to minor children by someone other than natural or adopted parents have proved to be a fertile source of litigation, particularly for grandparents. The New Jersey Supreme Court recently suggested five reasons for the almost unanimous denial of visitation rights to nonparents: (1) usually the parents' obligation to permit visitation is moral, not legal; (2) judicial intervention would divide parental authority; (3) the best interests of the child are threatened by a conflict between the parents and other parties; (4) where there is conflict, the parent should be the one to decide what should be done; and (5) the natural ties have a greater potential for restoring normal family relations rather than the coercive threat of an injunction or the backlash caused by its issuance. *Mimkon* v. *Ford,* 66 N. J. 426, 332 A.2d 199 (1975).