JANICE M. SALVESEN *vs.* LAWRENCE C. SALVESEN.

Middlesex.   May 5, 1976. — July 8, 1976.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, & WILKINS, JJ.

*Divorce,* Alimony, Separation agreement, Modification of decree.   *Con-- tempt.*

Where a divorce decree incorporated by reference alimony and child support provisions contained in a separate agreement, the provisions became part of the divorce decree. [610]

Where a divorce decree incorporated by reference a separate agreement providing for alimony and child support, the agreement did not preclude modification of the divorce decree by the Probate Court. [610-611]

A probate judge erred in sentencing to prison a husband who failed to make payments pursuant to a divorce decree where there was no evidence contradicting the husband's testimony that he was unable to pay the amount owed. [611]

LIBEL for divorce filed in the Probate Court for the county of Middlesex on November 12, 1969.

A petition for contempt was heard by *Freedman,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Edward M. Mahlowitz* for Lawrence C. Salvesen.

*Richard S. Daniels, Jr.*, for Janice M. Salvesen.

BRAUCHER, J.   A divorce decree incorporated by reference a separation agreement providing for alimony and child support, and the husband failed to make payments required by the agreement. We hold that the Probate Court had jurisdiction to enforce payment by contempt proceedings, but that the judge erred in failing to consider modification of the decree. The decision in *Gunter* v. *Gunter*, 3 Mass. App. Ct. 729 (1975), is disapproved to the extent that it indicates the contrary.

The decree of divorce nisi, entered April 9, 1970, awarded custody of the parties' five children to the wife and added, "and all other provisions are provided for in an agreement dated February 11, 1970 incorporated and filed herewith." The agreement provides, among other things, that the husband will pay to the wife $500 a month for her support and maintenance so long as she remains unmarried and $200 monthly for each child for child support and maintenance. After two years the latter payments become $240 monthly for each child. These payments "are based on the Husband's present income of approximately $3,200 per month gross. In the event of change of circumstances of the children's needs and requirements for care and support either party may petition any court of competent jurisdiction for a determination and order on the issue of child support." If the husband's gross income increases, he is to pay the wife no less than thirty per cent of the net excess after taxes. The provisions of the agreement "may be incorporated" in a divorce decree but the agreement "shall not be merged" in any such decree and "shall survive the same."

On February 15, 1973, the wife brought a petition for contempt, alleging nonpayment, and on June 21, 1973, "after hearing and by agreement" the arrearages were

found to be $7,200 and execution was issued for that amount. On March 25, 1974, the wife brought a second petition for contempt, claiming total arrearages in excess of $13,000, including the $7,200. The judge, as matter of law, denied the husband's motion for a temporary modification, and referred the contempt petition to an auditor. On October 21, 1974, the judge confirmed the auditor's report, found the husband in contempt, and ordered him committed to jail for six days and then for thirty consecutive weekends "until he shall purge himself of said contempt by payment of the sum of $13,854.64." The husband appealed, and a single justice of this court stayed the commitment to jail on condition that the husband pay $1,000 a month pending the appeal. We transferred the case to this court on our own motion.

1. *The effect of the divorce decree.* The husband argues that the divorce decree made no provision for alimony or child support, citing *Gunter* v. *Gunter,* 3 Mass. App. Ct. 729 (1975). There the court said, in similar circumstances, "Although the decree (from which no appeal was taken) referred to the agreement and purported to incorporate the same by reference (see *Smith* v. *Smith,* 358 Mass. 551, 553-554 [1971]), we think it did so only by way of explaining why no order was being entered for the support of the wife and minor child." We disagree. When the decree "purported" to incorporate the agreement by reference, for whatever reason, the result was the same as in the *Smith* case: "Thus the support provisions for both the wife and children became part of that decree." We therefore need not consider the legal situation which would be created if the divorce decree contained no support provisions. See *Kinosian* v. *Kinosian,* 351 Mass. 49, 52 (1966).

2. *Modification.* "It is settled that a separation agreement does not deprive the Probate Court of its power to modify its decree relating to alimony for the wife or support for the children." *Smith* v. *Smith,* 358 Mass. *supra* at 553, and cases cited. *Surabian* v. *Surabian,* 362 Mass. 342, 347 (1972). The judge in the present case denied the husband's motion for modification "as a matter of law." He

did not choose to hear evidence, since he saw no purpose in a modification in view of the wife's continuing right to bring an action for breach of contract. *Freeman* v. *Sieve,* 323 Mass. 652, 657 (1949), and cases cited. This was error. Whatever the effect of the agreement in an action for breach of contract, it was not a bar to modification of the divorce decree. *Wilson* v. *Caswell,* 272 Mass. 297, 302 (1930). Cf. *Manes* v. *Manes, ante,* 235, 237-238 (1976). To the extent that the decision in the *Gunter* case is to the contrary, we disapprove it.

3. *Contempt.* There was no attempt here to meet the procedural requirements for criminal contempt, and the case must be treated as one of civil contempt. A person judged in civil contempt may not be sentenced to prison for failure to pay a compensatory sum of money if he shows that he is unable to comply. *Sodones* v. *Sodones,* 366 Mass. 121, 130-131 (1974). The huband's uncontradicted testimony showed that he could not pay $13,854.64 at the time he was found in contempt. There was no contrary finding by the auditor, and we find no support in the record for the recital in the contempt order, "it appearing to the Court that said Lawrence C. Salvesen was of sufficient ability to pay and neglected and refused to pay the order of said Court in the sum of $13,854.64," if that recital is read as referring to ability at the time the order was entered.

4. *Disposition.* The orders appealed from are reversed and the case is remanded to the Probate Court for further proceedings consistent with this opinion. Costs of appeal, including the wife's counsel fees, are to be allowed in the discretion of the Probate Court judge. G. L. c. 208, §§ 17, 38. *House* v. *House,* 368 Mass. 120, 123 (1975).

*So ordered.*