MERLE H. PALTROW *v.* KENNETH C. PALTROW

[No. 1020, September Term, 1976.]

*Decided September 8, 1977.*

The cause was argued before THOMPSON, DAVIDSON and MOORE, JJ.

*Theodore Levin* for appellant.

*Alan I. Baron,* with whom were *Frank, Bernstein, Conaway & Goldman* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

In this custody case involving former spouses and their four minor children, the Circuit Court for Baltimore County (Maguire, J.) declined to exercise jurisdiction after the natural mother filed a bill of complaint for "Custody of Minor Children and Assumption of Jurisdiction," and the natural father interposed a Motion Ne Recipiatur under Maryland Rule 322, on the ground that the mother had failed to comply with the requirements of Section 191 of the Uniform Child Custody Jurisdiction Act, Code, Art. 16, § 184, *et seq.* (1957, 1973 Repl. Vol.).[1] The court granted the father's motion, holding that the Circuit Court for Multnomah County, Oregon, where the parties had been divorced and the father resided with two of the children, had already exercised jurisdiction in substantial conformity with the Oregon Uniform Act.[2] On this appeal the mother contends (1) that the Motion Ne Recipiatur was improperly employed, and (2) that the chancellor misinterpreted the provisions of the Uniform Act as it exists in Oregon and in Maryland. The conclusion we reach is that the Order appealed from should be affirmed.

I

The father is a psychiatrist, practicing in Oregon; the mother is an instructor in psychiatric nursing at Johns

---

1. Section 191 is entitled "Furnishing of information as to child," and requires every party in a custody proceeding in his first pleading or in a separate affidavit to disclose, *inter alia,* whether he has information of any custody proceeding concerning the child pending in a court of Maryland or any other State. Its provisions are quoted *infra,* p. 7, n.5.

2. The Oregon Act is contained in Oregon Statutes 109.700-109.930.

Hopkins Hospital in Baltimore. The parties were married in 1960 and were divorced in Oregon on September 1, 1972. Mrs. Paltrow was originally awarded custody of the four minor children, namely, Danielle, age 15; Tamar, age 13; Benjamin, age 11 and Ilan, age 8. Under an Order of Modification, dated December 1, 1975, custody of Danielle was awarded to Dr. Paltrow. On April 29, 1976, by a "stipulated order," Benjamin's custody was also transferred to the father. Both orders were adopted by the Circuit Court for Multnomah County, Oregon.

Prior to the entry of the Order dated December 1, 1975, Mrs. Paltrow informed the court of her intention to move from Oregon to Maryland. The Oregon court recited in the Order that the move was not in the best interests of the children, but, nevertheless, continued the modified custody in the mother upon condition that the children return to Oregon for visitation with their father during the summer recess.

The move to Maryland occurred on January 11, 1976. When the mother failed to return the children to Oregon during the following June, the father, on July 12, 1976, filed a Motion in Oregon to have Mrs. Paltrow adjudicated in contempt and to transfer to him the custody of the children, Tamar and Ilan.[3]

The mother's bill of complaint was filed on July 26, 1976, in the Circuit Court for Baltimore County, and requested that the court assume jurisdiction of Tamar and Ilan, the two minor children residing with her. She alleged that it was in the best interests of these children that future questions regarding their welfare be decided in the forum in which they were residing. The father did not file an answer to the bill of complaint but, as already indicated, filed a Motion Ne Recipiatur on which a hearing was held on September 27, 1976.

At the hearing, it was brought to the attention of the chancellor that prior to the institution of the proceedings

---

3. Service of the father's Motion and an Order to Show Cause dated July 30, 1976 was made upon Mrs. Paltrow's attorney in Baltimore on August 12, 1976.

194

below by the mother, Dr. Paltrow had commenced proceedings in Oregon to adjudicate Mrs. Paltrow in contempt and to transfer to him the custody of Tamar and Ilan and that the mother had been served and was required to appear in court on October 15, 1976.

Judge Maguire accordingly directed counsel for Dr. Paltrow to communicate with the Circuit Court for Multnomah County, Oregon and to request official records pertaining to the custody proceedings in that jurisdiction. On October 7, 1976, after having received an exemplified copy of the motion filed by the father in Oregon on July 12, 1976, the court communicated with counsel its decision that under Art. 16, § 188, entitled "Proceeding pending in another state," the Circuit Court for Baltimore County was divested of jurisdiction. This communication was followed by a Memorandum Opinion filed on November 9, 1976, in which the court stated in the opening paragraph:

"In order to clarify the record on appeal, I am setting forth in detail the reasoning behind my decision *not to exercise jurisdiction* in the above entitled matter." (Emphasis added.)

## II

The essence of appellant's first assignment of error is that the question of exercising jurisdiction or not should not have been decided on a Motion Ne Recipiatur. As the Court of Appeals and this Court have had occasion to hold, such a motion has a specific, limited purpose and may not serve the office of a demurrer, plea, motion raising preliminary objection or motion for summary judgment. *Millison v. Citizens National Bank of Southern Maryland*, 256 Md. 431, 438, 260 A. 2d 324 (1970); *McCormick v. St. Francis de Sales Church*, 219 Md. 422, 427, 149 A. 2d 768 (1959); *Doug-Dun Corp. v. Simms*, 31 Md. App. 350, 353, 357 A. 2d 392 (1976). Here, the motion was addressed to the failure of Mrs. Paltrow to supply in her bill of complaint or in a separate affidavit the information required by § 191 of the Uniform Child Custody Jurisdiction Act, particularly information

relating to Dr. Paltrow's pending motion in Oregon for transfer of custody.[4]

Although, in our judgment, it would have been more appropriate to dismiss the proceeding rather than to grant appellee's Motion Ne Recipiatur, we find no reversible error. In the first place, the issue has not been preserved for appellate review. Maryland Rule 1085. Our study of the transcript of the hearing on appellee's motion reveals that counsel for appellant, without voicing an objection, participated fully in the proceedings, made proffers of fact with respect to the background of the litigation, argued his interpretation of the effect of §§ 185, 189, 190 and 191 of the Uniform Act, clearly understood that the court would proceed to decide whether or not to exercise jurisdiction and even requested "a temporary custody order pending the jurisdiction question." Under such circumstances, it is quite plain that the matter sought to be raised on appeal was not properly preserved for our review.

---

4. The provisions of § 191 are as follows:

"§ 191. Furnishing of information as to child.

(a) Every party in a custody proceeding in his first pleading or in an affidavit attached to that pleading shall give information under oath as to the child's present address, the places where the child has lived within the last 5 years, and the names and present addresses of the persons with whom the child has lived during that period. In this pleading or affidavit every party shall further declare under oath whether:

(1) He has participated as a party, witness, or in any other capacity in any other litigation concerning the custody of the same child in this or any other state;

(2) He has information of any custody proceeding concerning the child pending in a court of this or any other state; and

(3) He knows of any person not a party to the proceedings who has physical custody of the child or claims to have custody or visitation rights with respect to the child.

(b) If the declaration as to any of the above items is in the affirmative, the declarant shall give additional information under oath as required by the court. The court may examine the parties under oath as to the details of the information furnished and as to other matters pertinent to the court's jurisdiction and the disposition of the case.

(c) Each party has a continuing duty to inform the court of any custody proceeding concerning the child in this or any other state of which he obtained information during this proceeding."

Furthermore, it is abundantly clear from a reading of the Uniform Act that even absent a motion, the court *sua sponte* could have considered the question of the exercise *vel non* of jurisdiction. This, we think, is apparent from the statement of general purposes contained at length in § 184 of the Act which reads in part:

" § 184. Purpose and construction of subtitle.

(a) The general purposes of this subtitle are to:

(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(3) Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, *and that courts of this State decline the exercise of jurisdiction when the child and his family have a closer connection with another state; . . .*" (Emphasis added.)

Our conclusion is also supported by the language of § 188, "Proceedings pending in another state," which provides in subsection (b):

"(b) Before hearing the petition in a custody proceeding the court shall examine the pleadings and other information supplied by the parties under § 191 and shall consult the child custody

registry established under § 198 [5] concerning the pendency of proceedings with respect to the child in other states."

We think it plain from the statement of purposes and the other sections cited that an equity court in a proceeding relating to child custody has an affirmative duty to examine the question of the pendency of proceedings elsewhere in Maryland or in other jurisdictions and should do so of its own motion even if the issue is not raised by the parties themselves. We also consider it not only proper but necessary for a court of this State to determine, as a preliminary matter, whether to exercise its jurisdiction where it becomes apparent that a proceeding concerning the custody of the child or children is pending in a court in another jurisdiction. This indeed is the mandate of § 188 of the Act, to which we now turn.

### III

Examination of the Uniform Act discloses that this remedial statute (a) defines when a court has jurisdiction, § 186, (b) specifies when jurisdiction *shall not* be exercised, § 188 (a), and (c) prescribes when jurisdiction may be declined, §§ 189, 190.[6] The chancellor in this case ruled in effect that although the Circuit Court for Baltimore County had jurisdiction, nonetheless § 188 (a) prohibited the

---

5. Section 198 is entitled, "Clerks to maintain registry; contents of registry" and requires the clerks of the Circuit Courts in Maryland to maintain registries in which shall be entered:

"(1) Certified copies of custody decrees of other states received for filing;

(2) Communications as to the pendency of custody proceedings in other states;

(3) Communications concerning a finding of inconvenient forum by a court of another state; and

(4) Other communications or documents concerning custody proceedings in another state which may affect the jurisdiction of a court of this State or the disposition to be made by it in a custody proceeding."

6. This Court first examined the jurisdictional aspects of the Uniform Child Custody Jurisdiction Act in Howard v. Gish, 36 Md. App. 446 (1977).

exercise of such jurisdiction. That portion of the Act reads as follows:

> "(a) Except where the child has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or is otherwise neglected or dependent, *a court of this State shall not exercise its jurisdiction* under this subtitle *if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this subtitle,* unless the proceeding is stayed by the court of the other state because this State is a more appropriate forum or for other reasons." (Emphasis added.)

It was the finding of the lower court (a) that at the time of the filing of Mrs. Paltrow's petition on July 26, 1976, a proceeding concerning the custody of the children was already pending in the Circuit Court for Multnomah County, Oregon, pursuant to a motion filed by Dr. Paltrow on July 12, 1976; and (b) that the Oregon court was exercising jurisdiction "substantially in conformity with this subtitle."

Support for the Oregon court's exercise of jurisdiction substantially in conformity with the provisions of the Uniform Act, which is also in effect in Oregon, was found by Judge Maguire in the provisions of § 186, "When court has jurisdiction," specifically subsection (a)(1). We consider it appropriate to quote § 186 in its entirety:

> "(a) A court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
>
> (1) This State (i) is the home state [7] of the child

---

7. Section 185 (5) provides:

"*'Home state'* means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least 6 consecutive

at the time of commencement of the proceeding, or (ii) had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State; or

(2) It is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(3) The child is physically present in this State and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

(4) (i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.

(b) Except under paragraphs (3) and (4) of subsection (a), physical presence in this State of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this State to make a child custody determination.

(c) Physical presence of the child, while

---

months, and in the case of a child less than 6 months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the 6-month period."

desirable, is not a prerequisite for jurisdiction to determine his custody."

With reference to the language employed in § (a)(1), *supra*, the court below noted that when the father filed his motion in Oregon on July 12, 1976, the children, who had moved to Maryland with their mother on January 11, 1976, had been residents of Maryland for two days beyond the six-month period set out in § 186 (a)(1)(ii) above. The court stated in his Memorandum Opinion:

> "However, considering the remedial nature of the act, and the fact that Oregon was the home state within one half year, or one hundred eighty-two days, of the Oregon filing, I find that the exercise of jurisdiction by the Oregon Court was in substantial conformity with the Act."

We think that the trial court was correct in this interpretation. The six-months provision in the statute is obviously not the equivalent of a statute of limitations and the court properly found substantial conformity with the provisions of the Act.

We observe in this connection that based upon the findings of fact recited in the memorandum opinion, the chancellor could also have found exercise of jurisdiction by the Oregon court substantially in conformity with the Act pursuant to the provisions of § 186 (a)(2), *supra*. Clearly the two children involved and the parents had a "significant connection" with Oregon where they had resided for a number of years, where the parties had been divorced, where the original decree of custody and two modification orders had been adopted, and where there was evidence of a sociological nature available to the Circuit Court for Multnomah County with reference to the Paltrow family.

We also observe that the facts and circumstances involved in these proceedings might well have justified the court, under § 189 of the Act, "Finding that court is inconvenient forum," to decline to exercise its jurisdiction and to dismiss the proceedings on the ground that Maryland was an

"inconvenient forum" and that the court of Oregon was a "more appropriate forum." Art. 16, § 189 (a). In this connection, we note that § 189 (c) provides that in determining whether it is in the interest of the child that another State assume jurisdiction, the court of the forum may take into account the following factors, among others:

"(1) If another state is or recently was the child's home state;

(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;

(3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationship is more readily available in another state;

(4) If the parties have agreed on another forum which is no less appropriate; and

(5) If the exercise of jurisdiction by a court of this State would contravene any of the purposes stated in § 184." ["Purpose and construction of subtitle."]

With respect to these factors, it is relevant that Oregon was the state where all four children had been raised and where two of the children reside with the father, in his custody. Oregon has the closer connection with the family and its court has considered the issue of custody on three occasions, the last being in April 1976, only three months prior to the institution of the instant proceedings.

IV

Included in appellee's brief was a Motion to Dismiss and a separate appendix. Appellee also filed a "Supplemental Motion to Dismiss Appeal" which this Court declined to receive because the rules do not provide for such a supplemental motion.

The original Motion to Dismiss is based upon the contention that the appeal is moot in light of the fact that on

October 19, 1976 the Oregon court issued a decree which awarded custody of all four children to Dr. Paltrow.

Documents supporting the Motion to Dismiss are contained in appellee's brief and appendix. They are not included in the record of the proceedings below and no motion was made to supplement the record. The Motion to Dismiss the appeal is therefore denied. *Community Realty Co. v. Siskos,* 31 Md. App. 99, 102, 354 A. 2d 181 (1976).

*Judgment affirmed; appellant to pay the costs.*