## MERLE H. PALTROW *v.* KENNETH C. PALTROW

[No. 112, September Term, 1977.]

*Decided July 19, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*Theodore Levin* for appellant.

*Alan I. Baron,* with whom were *Ann M. Turnbull* and *Frank, Bernstein, Conaway & Goldman* on the brief, for appellee.

COLE, J., delivered the opinion of the Court.

We are asked to deny full faith and credit to a decree from a foreign court in order that the Circuit Court for Baltimore County may entertain a petition for child custody filed by a Maryland resident. We decline to do so and shall explain.

Marle and Kenneth Paltrow, appellant and appellee, were divorced in Oregon on September 1, 1972, with Mrs. Paltrow

being awarded custody of their four minor children. Approximately three years later, custody of the oldest child, a daughter, was transferred by agreement to Dr. Paltrow. Also at that time Mrs. Paltrow said that she wanted to move to Maryland. The Oregon court permitted her to retain custody of the three remaining children with the express condition that they were to be returned to Oregon for summer vacations. Soon after the move, the older son, Benjamin, was sent back to Oregon to live with his father; thus, two children remained in Maryland.

The first summer after the move, in 1976, Mrs. Paltrow ignored the court order and kept the two children in Maryland. On July 12, 1976, Dr. Paltrow filed a motion in the original Oregon court asking that Mrs. Paltrow be held in contempt for failing to comply with the court order for visitation, and further requesting a transfer of custody from the mother to himself of the two children remaining in Maryland. On July 26, 1976, prior to disposition in Oregon, Mrs. Paltrow filed an action in the Circuit Court for Baltimore County asking that court to assume jurisdiction over the children and continue custody of them in Mrs. Paltrow. A motion *ne recipiatur* was filed on behalf of Dr. Paltrow, stating that Mrs. Paltrow had failed to comply with certain requirements in the statute concerning the content of the initial pleading in a custody proceeding.

Judge Maguire, presiding in the Circuit Court for Baltimore County, held a hearing on the matter on September 27, 1976. Dr. Paltrow's counsel argued that the pleading requirements were not merely a formality, but went to the heart of the question of jurisdiction. He said that jurisdiction was precluded because there was a pending proceeding in another state and he cited Maryland Code (1957, 1973 Repl. Vol., 1977 Cum. Supp.), Article 16, § 188. The court was told about the motion filed in Oregon on July 12, and was informed that Mrs. Paltrow had been served with notice of the action and was required to appear on October 15, 1976 in the Oregon court. Judge Maguire postponed a determination, requesting a certified copy of the docket entries from the Oregon court.

On October 8, 1976, Judge Maguire declined to hear the case based on Article 16, § 188.[1]

A hearing was held in Oregon on October 15, 1976, at which Mrs. Paltrow was represented by counsel. The court there found her in contempt, and transferred custody of the two remaining children in Maryland to their father in Oregon. On April 20, 1977, Mrs. Paltrow filed a motion to modify the decree, after having filed an appeal from the October order. She then dismissed her appeal, on May 3, 1977, and on May 17, 1977 the Oregon court denied her motion to modify. On September 8, 1977, the Court of Special Appeals of Maryland affirmed Judge Maguire's judgment, *Paltrow v. Paltrow,* 37 Md. App. 191, 376 A. 2d 1134 (1977), and the Court of Appeals granted the petition for writ of certiorari on November 22, 1977.

Both Maryland and Oregon have adopted the Uniform Child Custody Jurisdiction Act,[2] and the case at hand comes within its ambit. The first section of the act deals with the purposes in enacting it, foremost among them being to "avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being." [3] In light of this statement, we reiterate the law previously determined by this Court that child custody decrees rendered in other states are accorded full faith and credit in Maryland.[4]

---

1. § 188. Proceeding pending in another state.

   (a) Except where the child has been abandoned or it is necessary in an emergency to protect the child . . . a court of this State shall not exercise its jurisdiction under this subtitle if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this subtitle, unless the proceeding is stayed by the court of the other state because this State is a more appropriate forum or for other reasons.

2. *See* Article 16, §§ 184-207 of the Maryland Code, adopted July 1, 1975, and ORS 109.700 — 109.930, adopted October 5, 1973.

3. *See* § 184 of Article 16, Maryland Code.

4. Article IV, § 1 of the United States Constitution reads: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. . . ." The United States Supreme Court has had the opportunity to state that this provision applies to child custody decrees, but has declined to rule one way or the other. *See, e.g.,* Halvey v. Halvey, 330 U. S. 610, 67 S. Ct. 903, 91 L. Ed. 1133 (1947).

This Court and the Court of Special Appeals have said in past years that full faith and credit is extended to custody decrees in various situations. In *Rethorst v. Rethorst,* 214 Md. 1, 133 A. 2d 101 (1957), a California court had awarded custody of one child to the husband and another child to the wife. A later Maryland decree, also divorcing the parties, awarded custody of both children to the mother. We held that this denied full faith and credit to the California decree, since the parents and children were within the territorial jurisdiction of California and no final adjudication of their rights had taken place in Maryland. Mrs. Rethorst appeared personally in the California suit and participated fully in those proceedings. *Id.* at 13. *Sami v. Sami,* 29 Md. App. 161, 347 A. 2d 888 (1975), involved decrees issued in Florida first and then Maryland. Again, both parents and children were within the territorial jurisdiction of Florida and all issues before the court were fully litigated with all persons present. Judge Powers, writing for the Court of Special Appeals, said:

> Under the law which we must apply, we may not even consider whether the Maryland order or the Florida order may be right or may be wrong on the question of custody of the Sami children. The question has been decided by a Florida court in an order to which the courts of Maryland must extend full faith and credit. If the Florida decision is erroneous, it is subject to review on direct appeal from the Florida judgment through the Florida courts, and, if necessary, to the Supreme Court of the United States. [29 Md. App. at 179].

In the case *sub judice,* there has been a final litigation on the merits of the custody case in the courts of Oregon. On July 12, 1976, Dr. Paltrow filed his motion for custody. Mrs. Paltrow was served and represented by counsel in the hearing on that motion held in October, 1976. In April of 1977 she again was under the jurisdiction of the Oregon court, voluntarily submitting herself to it by making a motion to modify the October order. Furthermore, she dismissed her appeal from that order. As in *Rethorst* and *Sami,* the parents

and children were within the jurisdiction of the Oregon court; Mrs. Paltrow appeared at the hearing on her motion and her interests were represented throughout; and no final adjudication had occurred in Maryland. The Oregon decree awarding custody of the two minor children of the Paltrow's must be accorded full faith and credit in Maryland, without examining the merits of the final award.

For the foregoing reasons, we affirm the judgment of the Court of Special Appeals but on different grounds.

*Judgment of the Court of Special Appeals affirmed; costs to be paid by appellant.*