Thomas J. PAOLINO, Jr.

v.

Paula E. PAOLINO.

No. 77–383–Appeal.

Supreme Court of Rhode Island.

Sept. 22, 1980.

McKinnon & Fortunato, Stephen J. Fortunato, Jr., Pawtucket, for petitioner.

Abedon, Stanzler, Biener, Skolnik & Lipsey, Milton Stanzler, Providence, for respondent.

## OPINION

KELLEHER, Justice.

Thomas and Paula Paolino were married in Rhode Island on August 15, 1962, and divorced in Massachusetts. Paula is before us on her appeal from a decree modifying the visitation, support, and alimony provisions of the Massachusetts divorce decree.

The facts are relatively undisputed. Thomas and Paula are the parents of two minor children. Sometime after the marriage the couple settled in Massachusetts. Subsequently, marital misunderstandings developed, and Paula returned to Rhode Island with the children. A separation agreement dated July 7, 1972, granted Paula custody of the children and provided specific visitation rights for Thomas. In addition, Thomas agreed to make monthly support payments to Paula and the children. The parties agreed that the terms of the agreement would be governed by Massachusetts law and that the terms were subject to renegotiation "[u]pon the expiration of one year from the date hereof, or upon the remarriage of the Wife, whichever first occurs * * *." Each party had the right to submit terms of any renegotiation to binding and final arbitration. On the same day that the agreement was signed, Paula was awarded a divorce decree *nisi* by the Massachusetts Probate Court. The final decree of divorce was entered on January 8, 1973. The agreement was incorporated, but not merged, into the decree.

Three years later, in March 1976, Thomas filed in the Rhode Island Family Court a miscellaneous petition in which he sought additional visitation privileges. In his petition, Thomas contended that the Family Court need not give full faith and credit to the separation agreement as incorporated in the Massachusetts decree because the parties themselves, not the Probate Court, had defined the terms regarding custody and visitation. Thomas further argued that, regardless of the court's concern for constitutional comity, he was entitled to additional visitation rights because there had been a change in circumstances, including his remarriage, his closer proximity to Paula and the children, his permanent employment in Rhode Island, and his children's advancement in age and maturity.

In May of 1976 Thomas learned that Paula planned to remarry and relocate with the children in Philadelphia, Pennsylvania. He then amended his petition by asking that his monthly support payments as set forth in the separation agreement be reduced since upon remarriage Paula should no longer be entitled to alimony.[1] In addition, he sought "overnight visitation with his children two weekends a month at his residence plus one full uninterrupted month in the summer." On the very day that Thomas amended his petition, Paula filed a motion to dismiss the petition on the ground that she and Thomas had agreed to submit all post–divorce disputes to binding arbitration. Thomas, however, took the position that the separation agreement was a nullity.

By the time the amended miscellaneous petition and dismissal motion were heard in the Family Court, Paula had remarried and moved with the children to Philadelphia. During the hearing, Paula apparently suggested that the Pennsylvania court system would eventually acquire jurisdiction because she and the children intended to establish residence there.

In a decision rendered on December 23, 1976, the Family Court justice concluded that jurisdiction attached when Thomas filed his petition since the children were then residents of Rhode Island. He stated that once the court acquired jurisdiction, it could not be "relinquished * * * until the conclusion of the case" before the court. The trial justice, on the same ground, further ruled that he need not give full faith and credit to the visitation and support provisions incorporated into the Massachusetts decree. Consequently, Paula's motion to dismiss was denied.

The trial justice next ruled that in the best interests of the children "reasonable and liberal visitation rights" for the father were justified. These rights included visits every third weekend and on specific holidays and during alternate school vacations. The trial justice further held that Paula's remarriage terminated her right to receive alimony. He also reduced Thomas's monthly child–support obligation to $450. In reaching this conclusion, the trial justice found a change in Thomas's circumstances since the entry of the interlocutory decree, noting that Thomas's expenses had increased substantially since the execution of the separation agreement, primarily because of his remarriage and the additional transportation costs involved in visiting the children. A decree embodying these holdings was subsequently entered in the Family Court.

On appeal, Paula relies upon the binding–arbitration proviso of the separation agreement. Thomas, as noted earlier, contends that the agreement is a nullity because arbitration of visitation privileges and support obligations contravenes public policy, and the Family Court is the ultimate arbiter of the children's best interests.

Because the trial justice viewed Thomas's petition as one "to modify visitation rights and support payments," our initial task is to

1. The agreement provided that Thomas pay an $820 monthly support payment for the benefit of Paula and the children. In his amended petition he conceded that the agreement did not apportion the $820 between alimony and child support. However, he did ask the Family Court to reduce his payments so that he would be liable for only a $300 monthly child support payment.

decide whether the full–faith–and–credit clause of the Federal Constitution bars the Family Court of this state from modifying the provisions of the Massachusetts decree.

■ It is well–settled law in the otherwise unsettled area of custody litigation that a sister state may modify a custody decree to the extent that the same decree was modifiable in the rendering state. *See New York ex rel. Halvey v. Halvey*, 330 U.S. 610, 614–15, 67 S.Ct. 903, 906, 91 L.Ed. 1133, 1136 (1947), *McCullough v. Hudspeth*, R.I., 389 A.2d 1242, 1244 (1978). Indeed, the confusion engendered by the full–faith–and–credit question has prompted at least one court to declare unequivocally that the "full faith and credit clause does not apply to custody decrees." *Bachman v. Mejias*, 1 N.Y.2d 575, 580, 136 N.E.2d 866, 868, 154 N.Y.S.2d 903, 907 (1956).

■ Our review of Massachusetts law convinces us that alimony, child–support, and custody awards made by Massachusetts courts may be modified to meet changed circumstances even when, as in this case, the support provisions were originally set forth in a separation agreement incorporated into the divorce decree. *See Knox v. Remick*, 371 Mass. 433, 358 N.E.2d 432 (1976); *Ryan v. Ryan*, 371 Mass. 430, 358 N.E.2d 431 (1976); *Salvesen v. Salvesen*, 370 Mass. 608, 351 N.E.2d 499 (1976); *Pur–Shahriari v. Pur–Shahriari*, 355 Mass. 632, 246 N.E.2d 677 (1969); *Sloane v. Sloane*, 349 Mass. 318, 208 N.E.2d 211 (1965); Mass.Gen. Laws Ann. ch. 208, §§ 28, 37 (West). We conclude, therefore, that the full–faith–and–credit clause would not preclude modification by the Family Court of the Massachusetts custody, alimony, and support orders. For the reasons that follow, however, we hold that the Family Court decree presently being reviewed must be vacated.

■ The question narrows to whether the Family Court possessed the power to modify the foreign decree. As noted earlier, Paula, by implication, argued that because the State of Pennsylvania would also have jurisdiction, the Family Court should dismiss the miscellaneous petition. Unconvinced, the trial justice noted that the residence of the children in Rhode Island at the time Thomas filed his petition was dispositive. He concluded that once the court acquired jurisdiction, it could not be "relinquished to any other jurisdiction until the conclusion of the case * * *." Apparently, the trial justice, in making this observation, was alluding to the well–settled principle that holds that jurisdiction over custody and support of minor children, once established either in divorce or separate–maintenance proceedings, continues within the control of the trial court. *Cambra v. Cambra*, 114 R.I. 553, 556, 336 A.2d 842, 844 (1975); *King v. King*, 114 R.I. 329, 330, 333 A.2d 135, 137 (1975); *Reynolds v. Reynolds*, 79 R.I. 163, 166–67, 85 A.2d 565, 567 (1952). In light of the children's Rhode Island residence when the petition was filed and Paula's subsequent general appearance, we agree that the Family Court had personal jurisdiction.

■ Notwithstanding the ostensible "power" of the trial court over the parties, we are now faced with the more troublesome question of its subject–matter jurisdiction. Although neither party has addressed the jurisdictional aspects of this controversy, it goes without saying that jurisdiction over the subject matter is an indispensable ingredient of any judicial proceeding, that it can be raised by the court sua sponte at any time, and that it can be neither waived nor conferred by consent of the parties. *Naughton v. Goodman*, 117 R.I. 113, 118–19, 363 A.2d 1345, 1348 (1976); *Ryan v. DeMello*, 116 R.I. 264, 266, 354 A.2d 734, 735 (1976); *Castellucci v. Castellucci*, 116 R.I. 101, 103, 352 A.2d 640, 642 (1976).

■ Furthermore, as we have repeatedly emphasized, the authority of the Family Court to act in a given situation must be expressly conferred by G.L. 1956 (1969 Reenactment) § 8–10–3. *Christensen v. Christensen*, R.I., 397 A.2d 900, 901 (1979); *Britt v. Britt*, R.I., 383 A.2d 592, 594 (1978); *Fox v. Fox*, 115 R.I. 593, 596, 350 A.2d 602, 603 (1976); *Rogers v. Rogers*, 98 R.I. 263, 268, 201 A.2d 140, 143 (1964).

Turning now to the question of subject-matter jurisdiction, we note that at the time the trial justice heard and decided this dispute, G.L. 1956 (1969 Reenactment) § 8–10–3 authorized the Family Court to hear and decide

"all motions for allowance, alimony, support and custody of children * * * *wherein jurisdiction is acquired by the court by the filing of petitions for divorce, bed and board and separate maintenance* * * and custody of children in proceedings, whether or not supported by petitions for divorce or separate maintenance or for relief without commencement of divorce proceedings." (Emphasis added.)

We think this language is clear. Our reading of the statute convinces us that the Family Court was empowered by statute to hear motions regarding "allowance, alimony, support and custody of children" as ancillary to its divorce jurisdiction, that is, when the court had previously acquired jurisdiction "by the filing of petitions for divorce, bed and board and separate maintenance." Indeed, this court in the past, in construing the provisions of § 15–5–6, which spoke of alimony, has stressed that alimony is ancillary to an original divorce proceeding which was initiated in Rhode Island. *Brown v. Brown*, 48 R.I. 420, 138 A. 179 (1927); *Warren v. Warren*, 36 R.I. 167, 89 A. 651 (1914). Again, an examination of § 15–5–16, which authorizes the Family Court to enter child–support orders and to modify the same, specifically states that this power is to be used in behalf of "children of all persons by it [the court] divorced or petitioning for a divorce, and of all persons to whom a separate maintenance may be granted or who may petition for the same." Here, the litigants were already divorced when Thomas filed his miscellaneous petition.

■ Consequently, we find no legislative authority in § 8–10–3 which would permit the Family Court to modify the alimony and child–support provisions of the Massachusetts decree because the statute specifically enables the court to consider motions involving alimony or support only when "jurisdiction is acquired by the filing of petitions for divorce, bed and board and separate maintenance." Here, the litigants were already divorced when Thomas filed his miscellaneous petition. If the General Assembly wishes to bestow the requisite power upon the Family Court so that the justices can afford the type of relief given in this case by the trial justice, it may look to § 466(c) of the New York Family Court Act. In essence, the New York Legislature stipulates that if a foreign court "of competent jurisdiction" enters an order or decree granting alimony or support in a divorce case, the New York Family Court may "(i) entertain an application to enforce the order or decree * * * or (ii) entertain an application to modify the order or decree * * * *." N.Y. Judiciary Law (McKinney) § 466 (1975).

■ Visitation modification presents a different issue. In *Ryan v. DeMello*, 116 R.I. 264, 267–68, 354 A.2d 734, 736 (1976), we pointed out that visitation privileges are a part of the Family Court's power to determine questions of custody "whether or not supported by petitions for divorce or separate maintenance * * * *." Although we hold that the Family Court possessed both personal and subject–matter jurisdiction over the visitation portion of Thomas's petition, we must now examine the propriety of the trial justice's decision to exercise that authority in light of the particular facts of this case. When questions of custody or visitation are involved, we believe that the exercise of jurisdiction is discretionary rather than mandatory. *See* Clark, *Domestic Relations* § 11.5 at 319–23 (1968); 2 Nelson, *Divorce and Annulment* § 15.35 at 298 (2d ed. 1961). Ordinarily, we shall not disturb the exercise of a discretionary power by a trial justice unless it clearly appears that such discretion was improperly exercised or that there has been an abuse thereof. *Matracia v. Matracia*, R.I., 378 A.2d 1388, 1391 (1977); *Berberian v. Travisono*, 114 R.I. 269, 273–74, 332 A.2d 121, 124 (1975). However, in light of the following factors, we feel that the trial justice did abuse his discretion in exercising jurisdiction.

Thomas has been a Massachusetts domiciliary throughout these proceedings. Paula and the children are now domiciliaries of Pennsylvania. There is not a shred of evidence that their departure was an attempt to evade the jurisdiction of the Family Court. The basis of the parents' dispute springs from a Massachusetts divorce decree that incorporates a separation agreement entered into in Massachusetts in which the litigants agreed that any future disputes would be governed by Massachusetts law. The presence of Paula and the children in Rhode Island and Thomas's employment here at the time the petition was filed represented the only possible connection between the litigants and the courts of this state. Mindful of these factors, we conclude that our ability to enforce a decree entered here would be minimal. Surely, this interstate dispute, including the viability of the arbitration clause, could be more appropriately resolved in the courts of either Pennsylvania or Massachusetts.

█ The strongest support for our position in this matter is embodied in the Uniform Child Custody Jurisdiction Act[2] enacted by the Rhode Island Legislature at its January 1978 session to take effect on July 1, 1978. G.L. 1956 (1969 Reenactment) §§ 15–14–1 to 15–14–26. The act, addressing the problem of the "interstate" child, evinces a legislative intent to minimize jurisdictional competition and conflict so that custody decisions are rendered in the state best able to protect the welfare of the child. The act proposes that "courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state." G.L. 1956 (1969 Reenactment) § 15–14–2(a)(3). In an effort to stem the proliferation of jurisdiction in custody litigation, the act also seeks to "avoid relitigation of custody decisions * * [and to] facilitate the enforcement of custody decrees * * *." Section 15–14–2(a)(6), (7). The Legislature proposes to attain these goals by spelling out the jurisdictional prerequisites. Section 15–14–4. Jurisdiction is based on the concepts of the child's "home state" and "significant connection with Rhode Island." Section 15–14–4(a)(1)(i) and (2)(i).

Turning to the act, we note that the only basis upon which the Family Court could have acquired jurisdiction over the present controversy was that Rhode Island was the "home state" of the children at the time the litigation began. Section 15–14–4(a)(1)(i).[3] To acquire jurisdiction solely upon the "home state" distinction, however, would contravene the act's broad policy of minimizing jurisdictional disputes when, as in the present conflict, none of the parties retains contacts with this state.

Finally, and perhaps most dispositive, is § 15–14–8 that allows the Family Court to "decline to exercise its jurisdiction * * * if it finds that it is an inconvenient forum" and that a court of a sister state is more appropriate. The act lists the following factors that the court may consider in deciding an inconvenient forum question: (1) if another state is or recently was the child's "home state," (2) if another state has a closer connection with the child and his family, (3) if substantial evidence concerning the child is more readily available elsewhere, (4) if the parties have agreed on

---

2. In substance, the Uniform Child Custody Jurisdiction Act, promulgated in 1968 by the National Conference of Commissioners on Uniform State Laws and approved that same year by the American Bar Association, has been adopted in thirty–five states. *See generally,* Bodenheimer, *Progress under the Uniform Child Custody Jurisdiction Act and Remaining Problems: Punitive Decrees, Joint Custody, and Excessive Modifications,* 65 Cal.L.Rev. 978 (1977); Bodenheimer, *The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws,* 22 Vand.L.Rev. 1207 (1969).

3. As used in the statute, "home state" is defined as "the state in which the child immediately preceding the time involved lived with his parents, a parent, or person acting as parent, for at least 6 consecutive months, and in the case of a child less than 6 months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the 6–month or other period." G.L. 1956 (1969 Reenactment) § 15–14–3(6).

another equally appropriate forum, and (5) if the exercise of jurisdiction would contravene any of the act's purposes.

Throughout the country, courts, looking to the Uniform Child Custody Jurisdiction Act for guidance, are making a concerted attempt to reduce the confusion generated by repeated custody litigation. Numerous courts have exercised judicial restraint consistent with the spirit of the act. *E. g., Clark v. Superior Court,* 73 Cal.App.3d 298, 140 Cal.Rptr. 709 (1977); *Brown v. District Court,* 192 Colo. 93, 557 P.2d 384 (1976); *Paltrow v. Paltrow,* 37 Md.App. 191, 376 A.2d 1134 (1977), *aff'd,* 283 Md. 291, 388 A.2d 547 (1978); *McDonald v. McDonald,* 74 Mich.App. 119, 253 N.W.2d 678 (1977); *Carson v. Carson,* 29 Or.App. 861, 565 P.2d 763 (1977), *aff'd,* 282 Or. 469, 579 P.2d 846 (1978).

We are well aware that the Uniform Child Custody Jurisdiction Act did not take effect in Rhode Island until July 1, 1978, yet we find its principles, as a clear expression of the public policy of this state, controlling. We are further persuaded by courts who have cited the act's provisions even when not yet enacted by their legislatures, *In re Giblin,* 304 Minn. 510, 232 N.W.2d 214 (1975); *Dunkley v. Dunkley,* 89 Wash.2d 777, 575 P.2d 1071 (1978), and by a court that applied the act before its effective date. *In re Anonymous,* 92 Misc.2d 280, 401 N.Y.S.2d 438 (Sup.Ct.1978).

On the basis of the foregoing consideration and because we believe that the courts of either Pennsylvania or Massachusetts would be more appropriate forums to resolve the domestic disputes of the parties, including the viability of the arbitration proviso, the respondent's appeal is sustained, the decree appealed from is vacated, and the case is remanded to the Family Court with direction to dismiss the petition.

JOSLIN, J., was present for oral argument but did not participate in the decision.

DORIS, Justice, dissenting.

I dissent from the majority opinion for the simple reason that it lacks common sense, violates established and recognized law, and works an injustice on all the parties involved in this dispute.

Firstly, I do not gainsay the fact that the question of subject—matter jurisdiction can be raised by the parties or the court at any stage of a proceeding. Under the particular facts of this case, however, I would decline to exercise our right to raise that question because respondent herself acquiesced to the Family Court's authority. She states in her memoranda of law that the Family Court "has subject matter jurisdiction to adjudicate questions involving child support and visitation." Therefore, I can find no error by the Family Court justice in addressing the merits of the dispute dealing with the issue of modification of support payments.

Secondly, I cannot conclude that the Family Court justice abused his discretion in exercising jurisdiction over the issue of visitation modification. We have said that a trial justice exercises proper judicial discretion when "he consider[s] all the facts in relation to the rights of the parties and with just regard to what is right and reasonable." *Matracia v. Matracia,* R.I., 378 A.2d 1388, 1391 (1977).

I submit that here the Family Court was the most convenient and appropriate forum to adjudicate the dispute. There existed more than a bare or minimal nexus between the parents and the children and the forum state. At the time the miscellaneous and amended petitions were filed, Paula and the children were residents of the state. Thomas obviously had submitted to jurisdiction. The Family Court had maximum access to the relevant and essential evidence concerning the welfare of the children. It also had access to pertinent evidence concerning the change in circumstances, financial or otherwise, of both parents. It was in an optimal position to balance the relative competing interests of the parents. The case was ripe for decision, and therefore, it was right and reasonable for the Family Court justice to exercise jurisdiction on the matter of visitation modification.

Furthermore, I cannot comprehend how the majority opinion can draw its "most dispositive" and "strongest support" on this issue from the Uniform Child Jurisdiction Act. Such reliance exceeds bounds of logic and law because it attempts to interpret and then apply the legislative intent of the act to an issue that arose two years prior to the act's passage. It is unsound to find an abuse of judicial discretion by giving an act retroactive effect when the legislation itself clearly does not give such effect. *See e. g. Fox v. Fox*, 115 R.I. 593, 596–97, 350 A.2d 602, 603–04 (1976); *Town of Warren v. Frost*, 111 R.I. 217, 301 A.2d 572 (1973); *Langdeau v. Narragansett Insurance Co.*, 96 R.I. 276, 191 A.2d 28 (1963). By this action the majority opinion does a disservice to the public policy interests the act seeks to further.

Thirdly, the majority opinion gives but cursory attention to what respondent claims is the single issue in this dispute and the only issue that she briefed and raised at oral argument, that is, petitioner's failure to use the arbitration procedure as set forth in the settlement agreement. The majority's lack of emphasis on this issue is understandable since I perceive respondent's reliance on this point to be misguided under the facts of this case.

Massachusetts law indicates that arbitration clauses are to be enforced by that state's Superior Court and not the Probate Court. *Kutz v. Kutz*, 369 Mass. 969, 341 N.E.2d 682 (1976); Mass.Gen.Laws Ann. ch. 251, § 2 (West Supp. 1980). Rhode Island law indicates that arbitration clauses are to be enforced by the Superior Court and not the Family Court. *Douglas Construction and Supply Corp. v. Wholesale Center of North Main Street, Inc.*, R.I., 379 A.2d 917 (1977); G.L. 1956 (1969 Reenactment) § 10–3–4.

Here the Rhode Island Family Court has no authority to enforce the arbitration clause, and therefore the Family Court justice was not in error. This is not to say that respondent may not have an action to enforce the arbitration clause but rather that said action must be pursued in the appropriate state court at the appropriate time.

The majority opinion aggravates and delays, rather than settles, the present dispute. It encourages jurisdictional competition, and I believe this action will only have an adverse and disruptive effect on the well–being of the most important parties to this dispute, the children. In the final analysis the majority opinion violates accepted judicial policies and goals and results in a contradiction because it lends itself to interminable litigation between geographically separated parents, a condition that the majority opinion not only claims to avoid but professes to alleviate.

In view of the foregoing reasons, I would deny and dismiss the respondent's appeal, affirm the decree appealed from, and remand the case to the Family Court for further proceedings.